### No. 25,322.

FRED T. SHEETS, *Appellee,* v. THE FARMERS AND MERCHANTS MUTUAL LIFE AND CASUALTY ASSOCIATION and THE LIBERTY LIFE INSURANCE COMPANY, *Appellants.*

#### SYLLABUS BY THE COURT.

1. HEALTH INSURANCE—*Terms of Policy—Degrees of Disability—Two Rates of Insurance—Policy Construed.* A health insurance policy which stipulates for full indemnity for a disabling sickness for a period during which the insured is necessarily and continuously confined to the house, and a lower specified rate for such a sickness when he is not so confined, does not warrant the payment of full indemnity for the time the insured is able to leave the house and make visits to his physician.

2. SAME—*Construction Policy.* Under such a contract mere disability of the insured to work or pursue his ordinary avocation does not entitle him to the higher rate, but to recover full indemnity the degree of his disabling sickness must be such as to confine him to the house.

Appeal from Sedgwick district court, division No. 3; JESSE D. WALL, judge. Opinion filed June 7, 1924. Reversed.

*Stephen H. Allen, Otis S. Allen,* and *George S. Allen,* all of Topeka, for the appellants.

*A. V. Roberts, J. N. Haymaker,* and *R. E. Angle,* all of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action brought by Fred T. Sheets against the insurance company in which the plaintiff recovered a judgment for $160.70. The defendants appeal.

Sheets v. Life Insurance Co.

The policy contained the following health indemnity clause:

"C. *Sec. (a). Confining sickness.* If the insured shall suffer from any bodily sickness or disease . . . which renders him continuously unable to transact each and every part of his business duties, and which is contracted and begins after this policy has been maintained in continuous force for thirty consecutive days, the association will pay $70 per month, or at that rate for any proportionate part of a month for one day or more, not to exceed twelve consecutive months, that the insured by reason of such sickness.shall be necessarily and continuously confined within the house.

"*Sec. (b). Nonconfining sickness.* Or will pay the insured two-fifths of the amount specified in paragraph C, section (a), for such period, not exceeding two months, as the insured by reason of nonconfining sickness, or by reason of convalescence from a confining sickness, is wholly and continuously disabled from performig every duty pertaining to his business or occupation, although not confined within the house.

"The words 'confined within the house,' in paragraph C, section (a), shall not apply to carbuncles, boils and external abscesses."

The plaintiff had an attack of appendicitis on January 18, when he was taken to a hospital, where he remained until February 10, 1923, when he was taken to his home and remained there unfit to do any work or transact any part of his business duties until March 27. It appears that he left his home and made five calls upon his physician during the period for which he claimed indemnity. The trial court held that he was entitled to $70 per month from January 18 to March 27, 1922, and the defendants contend that under the terms of the policy he was only entitled to twelve days at the rate of $70 per month while he was necessarily and continuously confined to the house, and to two-fifths of $70 for the remainder of the time that he was disabled from performing his business occupation. The court held that the plaintiff was entitled to the rate prescribed for confining sickness during the entire time he was unable to work and transact his business duties.

As will be observed, the policy provides for two rates of insurance, one for disabling sickness by reason of which the insured is necessarily and continuously confined within the house, and another for such sickness which does not confine the insured within the house; and it also applies to a period of convalescence from a confining sickness which renders him unfit for performing the duties of his business or occupation, but does not confine him to the house. It was agreed that the insured should have a rate of $70 per month for a sickness which confined him to the house, but only to two-fifths of that rate or $28 per month for a nonconfining sickness. It is

insisted by plaintiff that incapacity for work or business was the prime condition contemplated by the parties for which insurance was to be paid, and that confinement to the house was not a material consideration; but this construction ignores and would nullify the second clause of the contract. The policy is not one of indemnity for disability alone. To recover the higher rate the disabling sickness must be such as keeps the insured necessarily and continuously in the house. The parties plainly contracted for degrees of sickness, and presumably premiums were assessed and paid on the basis of these degrees. It was not unreasonable to fix a higher rate for a sickness so serious as to confine the insured to the house than should be paid for an illness which disabled the insured from work or business, but did not prevent him from leaving his house and making calls on his doctor or upon others he chose to visit. The expense of the sickness where he was able to visit his physician would ordinarily be less than where the physician or nurse must attend him in his home. It was competent for the parties to stipulate that insurance should be paid according to the degrees of sickness which incapacitated the insured for work or business. They agreed that it should be measured by confinement to the house, and the court is not warranted in ignoring or eliminating an unambiguous provision included by the parties in their contract. The entire contract should be considered together and effect given to every part of it, and the clause relating to nonconfining sickness can no more be ignored than those limiting the time for which insurance shall.be paid. To do so would be to make a different contract than the parties had made for themselves. In *Rocci v. Massachusetts Accident Co.*, 222 Mass. 336, a somewhat similar policy was under consideration and in its interpretation Chief Justice Rugg said:

"A policy of insurance is a written contract. Its terms are to be given a reasonable construction. Each party is entitled to have the contract interpreted according to the words used, and not stretched to include gratuities to one whose misfortune may excite sympathy. A stipulation that there can be no recovery, except for a period while the insured is continuously confined within the house, is a reasonable one. It is for the parties to decide whether they want that kind of insurance." (p. 343.)

On a second appeal in the case consideration was given to the degrees of sickness provided for in the policy, one of which related to nonconfining sickness, and it was held that:

"There may be said to be three degrees of sickness. The first degree is when the patient is confined to his bed. The second degree is when he is not con-

fined to his bed but is confined to the house. And the third degree is when he is too sick to work but is not confined to the house. By the true construction of it the clause of the policy here in question ('that the insured by reason of sickness is necessarily and continuously confined within the house') is a requirement that the second of these three degrees of sickness should in fact exist." (*Rocci v. Massachusetts Accident Co.*, 226 Mass. 545, 552.)

In that case payment at a certain rate was to be made if the insured was necessarily and continuously confined within the house and was therein regularly visited by a regularly qualified physician, and it was said that if there was an exigency compelling a removal from the house by reason of a fire or an order of the board of health, it would not necessarily operate to break the actual continuity of confinement.

In another policy containing a provision that full indemnity should be paid where the insured was necessarily and continuously confined within the house and visited regularly by a physician therein, it was held that the insurer was not liable for full indemnity where the insured was convalescing and was unable to go about his ordinary affairs, but was able to sit on his porch and make visits to his doctor, and that this was made plain by the added provision for partial indemnity for a period when he was not confined to his house. It was said that the stipulation as to the time for which full indemnity should be paid was as plain and definite as it well could be, and that:

"It cannot be reasonably construed to include time around the house, about the house, or when he was making trips to Polar and receiving treatment in the physician's office." (*Reeves v. Midland Casualty Co.*, 170 Wis. 370, 374.)

(See, also, *Pirscher v. Casualty Co. of America*, 131 Md. 449; *Cooper v. Phœnix Accident, etc., Ass'n*, 141 Mich. 478; *Bruzas v. Peerless Casualty Co.*, 111 Me. 308; *Bradshaw v. Benevolent Ass'n*, 112 Mo. App. 435; *Bishop v. United States Casualty Co.*, 91 N. Y. Supp. 176; *Schneps v. Fidelity and Casualty Co.*, 101 N. Y. Supp. 106.)

Plaintiff cites *Mutual Benefit Ass'n v. Nancarrow*, 18 Colo. App. 274, which expresses views contrary to the general trend of authorities. There, however, the policy differed materially from the one under consideration, and did not contain a provision for a different rate for a nonconfining sickness, but provided that payments for certain kinds of sickness would be made from the first to the last visit of an attending physician if the plaintiff should be totally disabled and confined to the house. The language of the policy in

question leaves no doubt that a different rate is to be paid when the insured was not confined to his house, but was able to leave his home and travel to the doctor's office. There appears to be little dispute as to the time when the plaintiff was confined to the house and his home, and also as to the time he was able to leave his house. The parties will likely be able to agree as to these periods for which prescribed rates are to be paid, and a retrial will probably be unnecessary.

The judgment is reversed and the cause remanded for further proceedings in accordance with the rule of this opinion.