## V. E. BOCKMAN v. MUTUAL HEALTH BENEFIT & ACCIDENT ASSOCIATION.

Middle Section.    June 15, 1928.

George B. Haile, of Cookeville, for appellant, Bockman.
William Waller, of Nashville, for appellee, Association.

CROWNOVER, J. This was a suit to recover sick benefits accruing to the assured under a disability policy issued by the defendant association.

The bill alleged that the defendant issued a disability policy of insurance providing indemnity and sick benefits for total disability, and that the plaintiff became seriously afflicted of diabetes mellitus on January 19, 1927 and was placed in the Baptist Hospital in Nashville where he remained under the constant attendance of doctors until March 10, 1927, when he was permitted to return to his home in Cookeville, and that he remained totally disabled until April 19, 1927, for which he was entitled to $200 per month sick benefit, and to $150 per month hospital fees while in the hospital, and that he was also entitled to a twenty-five per cent penalty as the defendant had arbitrarily refused to pay said sick benefits. The defendant association answered and denied liability, insisting that the plaintiff's disability was due to nervousness, of which disability the defendant had been released in a rider attached to the policy, and the defendant also pleaded prematurity of suit.

A jury had been demanded in the pleadings, but by agreement the case was tried by the Chancellor, "actual jury being waived," upon an agreed statement of facts, and the depositions of two doctors.

At the hearing the Chancellor held that the suit was not prematurely brought because the defendant had denied liability, and held that complainant should recover $333.33 sick benefits from January 19 to March 10, 1927, and also $250 hospital fees for the same length of time, and $100 sick benefits from March 10, to April 10, 1927, making a total of $683.33. Both parties excepted and appealed but the defendant did not perfect its appeal. The complainant perfected his appeal and has assigned three errors, in which it was insisted that the Chancellor erred, (1) in declining to assess the statutory penalty of twenty-five per cent on the recovery; (2) that the Chancellor misconstrued certain provisions of the policy which resulted in a smaller recovery than complainant was entitled to, in that, complainant was entitled to recover $200 per month during his total disability, regardless of whether he was confined to the house, and (3) in holding that the case was tried according to the forms of chancery practice instead of by the Chancellor sitting as a jury.

The facts necessary to be stated are that the defendant association issued on June 1, 1925 a policy of insurance to the complainant Bockman, providing for certain specific indemnities and also against loss of time by sickness causing total disability, and for hospital fees not exceeding $150 per month, which policy was in force during the time of the disability in question.

During the summer of 1926 the complainant Bockman had been disabled through nervousness, for which the company had paid him

$400, and had agreed to leave the policy in force upon the condition that Bockman sign a rider attached to the policy releasing the company from liability for loss of time or disabilities caused by nervousness in the future. Thereafter in October, 1926 the complainant ascertained that he was afflicted with diabetes mellitus, and on January 19, 1927 he became totally disabled and had to be placed in the Baptist Hospital at Nashville where he was under the constant attendance of the doctors until March 10, 1927, when he was permitted to return home, and he continued to be totally disabled until April 19, 1927, when this suit was instituted. He was confined to the house during the whole time he was in the hospital, and was totally disabled from January 19 to April 19, 1927, but upon the advice of his doctors he was not confined to his room after he left the hospital, but upon their advice was permitted to go out in the sunshine and air, and he spent a part of two days trying three law-suits in the circuit court at Cookeville during the month of April. The defendant makes no question about the plaintiff's total disability, but insists in this court that under the terms of the policy it is liable for only $100 sick benefits for one month after he left the hospital, because he was not necessarily confined to the house, and it further insists that it is not liable for the twenty-five per cent penalty.

We will pass on the third assignment of error first.

The third assignment of error to the effect that the Chancellor erred in trying the case according to the forms of chancery practice, instead of sitting as a jury, should be sustained. As above stated, a jury was demanded in the pleadings, but it was agreed that the case should be tried by the Chancellor, "actual jury being waived," upon an agreed statement of facts which provided that the depositions of two doctors and certain documentary evidence should be made a part of the agreed statement of facts and read to the Chancellor at the hearing.

It was held in the case of Lieberman, Loveman & O'Brien v. Bowden, 121 Tenn., 496, 119 S. W., 64, 21 A. L. R., 443, that where a jury had been demanded in the pleadings and it did not appear that the demand had been expressly waived, but it was tried by the Chancellor on oral testimony, it would be presumed that a jury was waived, and such case was tried de novo, according to the forms of chancery practice in the appellate court. However, it was held in the cases of Choate v. Sewell, 142 Tenn., 487, 221 S. W., 190; Beatty v. Schenck, 127 Tenn., 63, 152 S. W., 1033, and in Watkins v. Sedberry, 155 Tenn., 148, 290 S. W., 970, and Rucker v. Dyersburg, 5 Tenn. App., 657, that where a jury was demanded and waived the cause was heard by the Chancellor as if before a jury, and therefore it was necessary to have a bill of exceptions and to file a motion for a new

trial before the appellate court could review the judgment of the lower court on questions of fact. This being true it was necessary that the appellant should have made a motion for a new trial in the court below, which he has not done; hence the decree must be affirmed in the absence of a motion for a new trial. But on account of the apparent conflict of authorities on the foregoing proposition, we will pass on the other two assignments of errors, as the result will be the same.

After a careful examination of the record and the authorities we are of the opinion that the first two assignments of error are not well made and should be overruled.

The first assignment to the effect that the court erred in not decreeing complainant the twenty-five per cent penalty on the recovery, as provided by section 1 of chapter 141 of the Acts of 1901, cannot be sustained for several reasons, first, because the suit was brought before the expiration of sixty days; second, it cannot be said that the refusal to pay was not in good faith, as complainant's demand was in excess of the legal liability of the company, and nothing appears to show that the company is not acting in good faith in making all its defenses. The letter of April 9th relied upon by the complainant as a denial of liability, while denying liability, expresses a desire to do no injustice to the policy-holder and to continue negotiations with a view to adjustment and settlement. See Kiisel v. Mutual Reserve Life Insurance Company, 131 Ia., 52, 107 N. W., 1027. Third, because it does not affirmatively appear by proof what expenses, if any, have been incurred by complainant, nor what additional injury or loss has been inflicted. However, had this reason been the only one for disallowing the penalty, we might have allowed complainant's solicitor's fee under the rule laid down in the case of Edington v. Insurance Co., 134 Tenn., 188, 183 S. W. Rep., 728. Fourth, because there was no formal demand for payment made. See De Rossett Hat Co. v. Fire Insurance Co., 134 Tenn., 199, 183 S. W., 720. Hence this assignment of error must be overruled.

The second assignment, in which it is insisted that the Chancellor misconstrued certain provisions of the policy in that complainant was entitled to $200 per month for the whole time of total disability, presents a more serious proposition, but after carefully reading the policy, and the authorities we are of the opinion that the Chancellor was correct and that this assignment of error should be overruled. The provisions of the policy in question are:

"Illness indemnities

"Part I. Confining illness $200 per month for life.

"The association will pay, for one day or more, at the rate of two hundred ($200) dollars per month for disability resulting from disease, the cause of which originates more than

thirty days after the date of this policy, and which confines the insured continuously within doors and requires regular visits therein by legally qualified physician; provided said disease necessitates total disability and total loss of time.

"Part J. Non-confining illness $100 per month. ·

"The Association will pay, for one day or more, at the rate of one hundred ($100) dollars per month, but not exceeding one month, for disability resulting from disease, the cause of which originates more than thirty days after the date of this policy, and which does not confine the insured continuously within doors but requires regular medical attention; provided said disease necessitates total disability and total loss of time."

As will be observed the policy provides for two rates of insurance, one for disability resulting from disease by reason of which the insured is confined continuously within doors, and another for such sickness which does not confine the insured continuously within doors. In other words, it was agreed that the insured should have $200 per month for life for confining illness and only $100 for one month for non-confining illness.

This identical proposition was raised and passed upon by the Supreme Court of Kansas in the case of Sheets v. The Farmers & Merchants Mutual Life & Casualty Association, 116 Kans., 356, 225 Pac. Rep., 929, and that court said:

"It is insisted by plaintiff that incapacity for work or business was the prime condition contemplated by the parties for which insurance was to be paid, and that confinement to the house was not a material consideration, but this construction ignores and would nullify the second clause of the contract. The policy is not one of indemnity for disability alone. To recover the higher rate, the disabling sickness must be such as keeps the insured necessarily and continuously in the house. The parties·plainly contracted for degrees of sickness and presumably premiums were assessed and paid on the basis of these degrees. . . . It was competent for the parties to stipulate that insurance should be paid according to the degrees of ˙sickness which incapacitated.the insured for work or business. They agreed that it would be measured by confinement to the house. and the court is not warranted in ignoring or eliminating an unambiguous provision included by the parties in their contract. The entire contract should be considered together and effect given to every part of it, and the clause relating to non-confining sickness can be no more ignored than those limiting the time for which insurance shall be paid. To do so would be to make a different contract than the parties made for themselves." See Rocci v. Mass. Accident Co., 222 Mass., 336, 110 N. E., 972, Ann. Cas., 1918C, 529; Reeves v. Midland Casualty Co., 170 Wis.,

370, 174 N. W., 475, 959, and many other cases cited in the Sheets case.

As will be seen by an examination of the authorities, there is a great difference of opinion as to the construction of the clause with reference to the terms "confinement to the house," or "confinement to the room," or "confinement in bed." Many courts construe these terms rather liberally in favor of the insured, and to the effect that the right of recovery depends on the disability of the insured to perform the duties of his vocation, and not on his confinement to the house, or room or bed, regarding the extent of confinement merely as an evidentiary and not an ultimate fact. See 6 Cooley's Briefs on Insurance (2 Ed.), 5549-5555; 1 C. J., 466, 14 R. C. L., 1318; Fuller's Accident & Employers Liability Insurance, 308 to 313 and authorities cited; Life & Accident Insurance Co. v. Bradley, 6 Hig., 566. However, the policies in many of the cases cited in the above authorities differ materially from the one under consideration, and do not contain a provision for a different rate for non-confining sickness, but provided that payments for certain kinds of sickness would be made from the first to the last visit of an attending physician, if the plaintiff should be totally disabled and confined to the house. The language of the policy now in question leaves no doubt that a different rate is to be paid when the insured was not confined to his room; but was able to leave his room and go to the courthouse to try cases and to "stir around for the purpose of getting air and sunshine." But in policies like those in the Sheets and Reeves cases, above cited, stipulating full indemnity for disabling sickness for a period during which insured is necessarily and continuously confined to the house, and also specified rate for such sickness when he is not so confined, do not warrant payment of full indemnities for the time the insured is able to leave the house and make visits to his physician, or to sit on the porch while convalescing, or to go to the courthouse and try cases and go elsewhere in order to be in the sunshine and to get fresh air. The parties made this contract and the court has no right to alter it. Courts will not make a contract for parties which they did not make nor intend to make for themselves. See Southern Style Shops v. Mann, et al., 4 S. W. (2d.), 959. It results that this assignment of error must be overruled.

It results that the judgment of the lower court is affirmed and a decree will be entered in this court in favor of the appellant for the sum of $683.33, and interest thereon from June 28, 1927, together with the cost of the cause in the court below, but the cost of the appeal is adjudged against the appellant Bockman and the surety on his appeal bond. Executions will issue accordingly.

Faw, P. J., and DeWitt, J., concur.