On April 26, 1927, E.P. Stubblefield, postmaster at Morrison, upon solicitation by one W.C. Brown, agent for the Mutual Benefit Health Accident Association, made application to said Association for a policy of insurance against injuries from accident and disability from disease. The policy was issued on May 5, 1927, and delivered to said applicant. He paid the premiums thereon, or tendered them, so that there is no issue as to lapse for non-payment. The issues presented upon this record are:
(1) Whether or not the policy was void ab initio for misrepresentation material to the risk made in the application;
(2) Whether or not the defendant is estopped to rely upon any misrepresentation contained in the application;
(3) Whether or not the illness of the insured from and after December 1, 1928, was a "confining illness" within the meaning of the contract.
The bill in this cause was filed on March 28, 1929, by the insured, E.P. Stubblefield, to recover benefits under said policy because on or about October 25, 1928, he became ill from what was diagnosed by his physicians as a cancer of the intestines and was totally disabled, and confined continuously within doors and required the services of physicians from that time. The Insurance Company filed an answer and cross-bill, denying liability on the ground that complainant knowingly made a false representation material to the risk in his written application for the insurance. It alleged, and it is undisputed, that on or about January 29, 1929, it notified the insured that it would treat the policy as void, and tendered to him the amount of the premiums paid from the date of issuance of the policy. It prayed that the policy be declared void.
To this cross-bill the complainant filed an answer embodying a plea of estoppel because of knowledge on the part of the agent of the true facts and his misleading complainant into believing that the representations made by him related to matters that were trivial and not material to the risk.
Prior to the hearing and determination of this cause the complainant E.P. Stubblefield died and the cause was revived in the name of his widow as executrix of his will.
The Chancellor sustained the bill and dismissed the cross-bill. He rendered a decree in favor of the executrix against the Association for the sum of $763.25, as indemnity provided by the policy as follows: for partial disability and confining illness for the month of November, 1928, $50; for total disability and confining illness from December 1, 1928, until July 4, 1929, at the rate of $100 per month, $710; for expense for hospital service, $3.25.
The application contained the following questions and answers: *Page 413 
 "13. Have you received medical or surgical advice or treatment or had any local or constitutional disease within the past five years? Answer to each — No."
 "18. Do you hereby apply to the Mutual Benefit Health and Accident Association for a policy to be based upon the foregoing statements of facts, and do you understand and agree that the falsity of any statement in this application shall bar the right to recover if such false statement is made with intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the Association, and, do you agree to notify the Association promptly of any change in your occupation, or if you take additional insurance? Yes."
The policy provided for strict compliance on the part of the insured and the beneficiary with all the provisions and agreements of the policy and the application, as a condition precedent to recovery, and for forfeiture of all right to indemnity for any failure in this respect. It further provided:
 "No statement made by the applicant for insurance not included herein shall void the policy or be used in any legal proceeding hereunder. No agent has any authority to change this policy or to waive any of its provisions."
In answer to an interrogatory as to what happened when the aforesaid question No. 13 in the application, was asked, the insured, E.P. Stubblefield testified:
 "I told Mr. Brown that I had not lost a day's work in twenty-five years on account of sickness, but about two years before I took out the policy I had a spell with my liver and that I went to Dr. Price to get medicine for a torpid liver and I went back three or four times, but during this time I was doing my full work. Mr. Brown said that that made no difference as anybody was liable to these bilious attacks."
He testified that other than this he had neither received treatment nor had any local or constitutional disease within the previous five years; and that he considered himself to be in sound health, having his normal weight. He further said that he had no intention of deceiving the Association; that Brown wrote the answers, and he signed the application with full knowledge of the negative answer to question 13, having confidence in what Brown had said to him. He stated that his statement to Brown was a complete disclosure of his previous trouble and treatment; and that there was no connection between the former illness and that from which he was then suffering. The former trouble arose in the year 1926. He stated that it was in the side of his body, while the trouble then existing was "one big rising after another" in his abdomen.
The insured's physician, Dr. Price, testified that in August, 1926, he made a careful examination of him and diagnosed his trouble *Page 414 
as cholecystitis, an inflammatory condition of the gall bladder; that after treatment with medicine and use of proper diet, he considered him cured. He knew of no recurrence of this trouble. His patient gained twenty pounds, attaining his normal weight. The physician said that the intestinal cancer was not caused by the previous condition of the gall bladder, and that, so far as he knew, it would not lead to it. He said that he did not consider the previous trouble as serious; that it was a toxic condition requiring about three months of treatment "to get him back into good shape." There is no evidence of any causal relation between the former and the latter troubles.
If the soliciting agent had written the statement which the applicant gave to him, the Association would have found, upon full investigation, that the previous illness was not serious, but was a slight or temporary illness which left no detrimental effect upon the general health or constitution of the applicant. The statute, Shannon's Code, sec. 3306, provides that no misrepresentation "shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation (or warranty) is made with actual intent to deceive, or unless the matter represented increase the risk of loss."
This statute incorporates itself in every policy of insurance issued, and serves as an effectual bar to the destruction of the rights of the insured, or the beneficiary, where innocent mistakes of fact which are not material to the risk have been made. Insurance Co. v. Stallings, 110 Tenn. 1, 72 S.W. 960.
The representation which would avoid the policy must be false in the sense that it was made with intent to deceive and concealed matters which increased the risk of loss. Volunteer State Life Ins. Co. v. Richardson, 146 Tenn. 589, 244 S.W. 44, 26 A.L.R., 1270. We cannot see how the answer to question 13 in the application in question could be made with intent to deceive, when the applicant answered the question truthfully to the agent of the Association. The knowledge of the agent must be imputed to his principal. Under chapter 442 of the Acts of 1907 (being section 3275a2 of Shannon's Annotated Code) such agent is regarded as the agent of the company, and not the agent of the insured, in all matters relating to the application and the policy issued in consequence thereof. Upon these principles the Association cannot be heard to say that had it known the true facts it would not have issued the policy. We might go further and apply the rule that after the illness or death has occurred it is for the court to say whether or not the alleged misrepresentation was of that character which would reasonably affect the insurer's judgment as to the issuance of the policy. Volunteer State Life Ins. Co. v. Richardson, supra. But it is sufficient to say that the Association is clearly *Page 415 
estopped to set up such a defense. Insurance Co. v. King,137 Tenn. 685, 195 S.W. 585; Moak v. Continental Casualty Co.,4 Tenn. App. 287, and cases cited. The argument that no estoppel could arise in view of the knowledge of the applicant that the agent had written an untrue answer is not sustainable because the applicant accepted in good faith the agent's assurance that the question did not relate to such facts as the applicant had disclosed; and to allow the Association, under such circumstances, to avoid its contract, on account of the assurance which it, through its agent, gave to the applicant, would be to allow it to take advantage of its own wrong. Planters' Ins. Co. v. Sorrels, 1 Baxt., 352; Hale v. Sovereign Camp, 143 Tenn. 555, 226 S.W. 1045. The applicant could thus rely on the agent's determination of the materiality of the question and answer and the necessity of disclosure called for by the question. 5 Cooley's Briefs on Insurance, p. 4123, and cases cited. In view of his good faith, the insured could not equitably be deprived of benefits upon the theory of his conscious participation in any fraud.
The Chancellor awarded the maximum benefit of one hundred dollars per month upon the conclusion that the insured was under "disability resulting from disease, which confines the insured continuously within doors and requires regular visits therein by legally qualified physician; provided said disease necessitates total disability and total loss of time."
The policy also provided for a payment at the rate of $50 per month, and not exceeding one month, for disability resulting from disease, "and which does not confine the insured continuously within doors, but requires regular medical attention; provided said disease necessitates total disability and total loss of time."
Mr. Stubblefield was constantly under treatment by physicians from the latter part of October, 1928, until his death. This treatment was given him at his home, at Nashville, at Chattanooga and at St. Louis, Missouri. From April 1, 1929, he was confined to his bed. About December 1, 1928, he employed another person to do his work as postmaster, and he was from that time unable to attend to the ordinary duties of his office, except that he spent about an hour every morning at his office and came back home and went to bed. During this hour at his office he did nothing except look over his books. He was physically unable to do any other kind of work. The appellant insists that the insured was entitled to in any event only $50 for non-confining illness for one month preceding April 1, 1929, $100 per month for the period from that date to the date of death, and $3.25 for hospital expenses. It is admitted that he was totally disabled from and after December 1, 1928, but insisted that his illness did not become a confining one so as to entitle him to the maximum benefit, until April 1, 1929. *Page 416 
A rule of liberal construction in favor of the insured and against the insurer has generally been applied in determining what constitutes a continuous confinement to the house, in suits upon policies which did not provide different benefits where the insured were not confined continuously within doors. In such a case, where the insured was totally disabled and suffered total loss of time from the performance of his regular occupation, if he stepped occasionally into his yard, or visited his physician, or sat on his porch, or left his house for a short time for other purposes, he is not regarded as not confined to his house. Wilkes v. Insurance Co., 7 Tenn. App. 36; Insurance Co. v. Bradley, 6 Hig., 566; Insurance Co. v. Hawes, 42 L.R.A. (N.S.), 700, and note; Jennings v. Brotherhood, 44 Colo. 18 L.R.A. (N.S.), 109; Briel v. Insurance Co., 23 L.R.A. (N.S.), 359; 14 R.C.L., 1318.
However, a rule of literal construction has generally been applied where the policy provided other benefits for illness which did not confine the insured continuously within doors. The view is taken that under a liberal rule this provision would be meaningless. This court upheld this view in Bockman v. Mutual Health B. A. Ass'n., 7 Tenn. App. 618, holding that the insured, a lawyer, was not entitled to the full benefits where the policy contained literally the same provisions as those now under interpretation, as he was able to leave his room and go to the courthouse to try cases and to "stir around for the purpose of getting air and sunshine." Of course, he was not totally disabled, but it was said: "The language of the policy now in question leaves no doubt that a different rate is to be paid when the insured was not confined to his room." A leading case, and one quite analogous upon its facts, is Sheets v. The Farmers 
Merchants Mutual Life Casualty Association, 116 Kans., 356, 225 Pac. Rep., 929, in which the court said:
 "As will be observed, the policy provides for two rates of insurance, one for disabling sickness by reason of which the insured is necessarily and continuously confined within the house, and another for such sickness which does not confine the insured within the house. . . . It is insisted by plaintiff that incapacity for work or business was the prime condition contemplated by the parties for which insurance was to be paid, and that confinement to the house was not a material consideration, but this construction ignores and would nullify the second clause of the contract. The policy is not one of indemnity for disability alone. To recover the higher rate, the disabling sickness must be such as keeps the insured necessarily and continuously in the house. The parties plainly contracted for degrees of sickness and presumably premiums were assessed and paid on the basis of these degrees. . . . It was *Page 417 
competent for the parties to stipulate that insurance should be paid according to the degrees of sickness which incapacitated the insured for work or business. They agreed that it would be measured by confinement to the house, and the court is not warranted in ignoring or eliminating an ambiguous provision included by the parties in their contract. The entire contract should be considered together and effect given to every part of it, and the clause relating to non-confining sickness can be no more ignored than those limiting the time for which insurance shall be paid. To do so would be to make a different contract than the parties made for themselves."
We must adhere to the terms of the contract. The illness of Mr. Stubblefield from October, 1928, until April 1, 1929, fell within the second category described in the policy; otherwise, that provision would be of no force or effect. The Association had the right to differentiate between "confining," and "non-confining" illness in contracting to pay indemnity. It was not unreasonable to fix a higher rate of indemnity for a sickness so serious as to confine the insured totally to the house, than should be paid for an illness which disabled the insured from work or business, but did not prevent him from leaving the house and spending an hour each day at his office.
It results, therefore, that the amount which the complainant is entitled to recover of the defendant is $366.58 with interest from the date of the decree of the Chancery Court, and said decree is so modified and affirmed. A decree will be entered in this court for said sum and all costs in favor of the complainant against the defendant and the surety on its appeal bond.
Faw, P.J., and Crownover, J., concur.