64 So.2d 613

## FRANKLIN LIFE INS. CO. v. BASSETT.

### 4 Div. 193.

Court of Appeals of Alabama.

April 7, 1953.

E. C. Orme, Troy, for appellant.

Jack L. Giddens and John W. Gibson, Troy, for appellee.

PRICE, Judge.

Suit was brought by the plaintiff, Mary Emma Bassett, against the Franklin Life Insurance Company to recover disability benefits under a contract of insurance for the period commencing October 13, 1948, and ending May 13, 1949, at $50 per month, together with interest thereon. The complaint alleges that benefits provided by said contract were paid by defendant for the period from June 15, 1946, to October 13, 1948, and that notwithstanding plaintiff was under such disability on February 28, 1949, defendant demanded the premium, which was paid under protest.

In addition to the general issue, defendant pleaded the following provisions of the policy:

"Total disability. If illness as before described shall wholly, necessarily and continuously disable and prevent the insured from performing each and every duty pertaining to his occupation, the Company will pay, beginning within 91 days of disability, the monthly illness indemnity for the period the insured shall live and be so disabled and necessarily, strictly and continuously confined within the house and therein regularly visited and attended by a legally qualified physician or surgeon other than himself. Indemnity is not payable for the first 90 days of any period of disability as defined in Part III. The Defendant avers that the Plaintiff was not disabled and necessarily, strictly and continuously confined within the house and therein regularly visited and attended by a legally qualified physician or surgeon other than himself."

For replication to the special plea plaintiff set up a modification of the contract of insurance contained in a letter written by the President of the Franklin Life Insurance Company. The letter is fully set out in the replication, but to avoid length-

ening this opinion unduly we here set out only the following pertinent paragraph:

"House confinement 'does not mean the actual restraint within four walls. If the claimant has to go to the doctor's office and is required to report to the hospital for X-rays, examination, etc., then it is just common sense that this does not avoid any legitimate claim, and naturally any period spent in the hospital or similar institution would be considered 'house confinement.' Further more, the claimant can enjoy the immediate surroundings of his house, and if necessary for the improvement of his health, can enjoy occasional automobile rides."

For rejoinder to the replication defendant denied that it was liable to plaintiff under the original policy or under the alleged modification of the policy as set out in the replication.

There was a verdict and judgment for plaintiff and defendant appeals.

The plaintiff testified that in January of 1945 she made application to the Franklin Life Insurance Company for a monthly income disability and indemnity policy and thereafter policy No. 525582–D was issued to her, on which she paid the premium. The said policy was offered in evidence as plaintiff's Exhibit A.

A few months after the receipt of the policy Mr. Ernest Rogers, defendant's agent who took the application for the policy, called on plaintiff and exhibited to her a letter addressed to Mr. W. W. Chamberlin, Jr., 205 Vandiver Building, Montgomery, Alabama, signed by the president of the Franklin Life Insurance Company, and thereafter, on February 28, 1946, plaintiff paid another premium on the policy. Defendant's counsel admitted this letter was written by the President of defendant company, but stated the original could not be produced and a copy was introduced as plaintiff's Exhibit "B" without objection. This being the letter set out in plaintiff's replication.

A few months later plaintiff became ill and went to Dr. J. O. Colley, Jr., of Troy,

for treatment. Acting on his advice she ceased all work on June 15, 1946. Proof of loss was duly mailed to defendant and plaintiff received a check each month until November 4, 1948, when she received a letter from defendant company stating its claims committee "is now of the opinion that while a partial disability may exist, you are not disabled to the extent required by your contract. In fact, possibly this condition may have existed before October 13th (The date of the last monthly income payment) but we are willing to permit payments already made, to stand. We are however discontinuing the disability claim as of October 13, 1948, in this case." This letter was offered in evidence as plaintiff's exhibit C.

At the time she received this letter plaintiff was still under the regular care and treatment of Dr. Colley and remained under his care and was totally disabled from October 13, 1948 to February 28, 1949. Her physician's advice to her was "to lounge around and be quiet, and if it was necessary, ride out and get a little fresh air and that would help me, be out to myself mostly, out of a crowd, out of the noise and all, around the house." She was weak and nervous and unable to do work of any kind.

She admitted on cross examination that during the time involved in the complaint she went fishing sometimes twice a week, to a place she could get to by riding. Usually she went to Bassett's pond about six miles from town; went to church, but not very often, maybe once or twice a month; went to the Bassett reunion about six miles away, but left right after lunch; went to her nephew's funeral about fifteen miles from Troy, going directly to the church and back home; every three or four days she rode with her husband three miles in the country and sat in the car while he fed ten or twelve cows and a few calves. She and her husband stayed at Compass Lake for ten days with Blake Bassett, his wife and daughter. This was in the summer, several months before she received the letter notifying her she was no longer considered totally disabled. Mrs. Blake Bassett did all the cooking at the lake. Plain-

·tiff did no cooking or housework at home. She was taking two or three kinds of medicine several times a day. She visited the doctor's office oftener than he came to her home. She was unable to state the exact number of times she saw him, but thought it was almost every week and sometimes more than once a week. On occasions there may have been two weeks between her visits to his office.

Dr. Colley testified that in June, 1946, he found Mrs. Bassett to be suffering from cancer of the uterus and on June 15, 1946 surgery was performed, consisting of the complete removal of all female organs, uterus, ovaries, tubes, in fact, the entire female tract. Following the operation witness prescribed for plaintiff replacement hormones and sedatives, which she has had to have continuously since that time. The physician testified that during the period involved in this suit he regularly treated plaintiff and prescribed medicines for her and during such period she was totally disabled.

On cross examination this witness stated that during the period sued for he saw plaintiff on November 12, 29 and December 13th of 1948. In 1949 he saw her January 21, 24, 26, 28, 31st; February 2, 11; March 11th and April 24th. Three of these occasions were visits by the doctor to plaintiff's home. The others were trips by plaintiff to his office. On some of the office visits plaintiff was X-rayed.

Defendant offered no evidence on the trial.

This court has recently construed an identical "house confinement clause" in the cases of Franklin Life Insurance Company v. Lewis, Ala.App., 55 So.2d 518 [1] and Franklin Life Insurance Company v. Strength, Ala.App., 58 So.2d 126.[2] In those cases we concluded that a strict literal construction should not be applied to the condition "and necessarily, strictly and continuously confined within the house and therein regularly visited and attended by a legally qualified physician or surgeon other than himself."

Many pronouncements from courts of other jurisdictions were reviewed in those cases.

The following cases also hold that like provisions in contracts of insurance are satisfied even though the insured took rides and exercise outside the house to facilitate his recovery, especially when acting upon the advice of a physician.

In Hoffman v. Michigan Home & Hospital Ass'n, 128 Mich. 323, 87 N.W. 265, 54 L.R.A. 746, it was held that a similar contract was not defeated by the fact that insured went out by direction of his physician for an occasional and necessary airing. In that case plaintiff made a trip to Chicago because the doctor thought the change would do him good.

In Breil v. Claus Groth Plattdutschen Vereen, 84 Neb. 155, 120 N.W. 905, 23 L.R.A.,N.S., 359, plaintiff took rides in the fresh air under the advice of his physician.

In Aetna Life Ins. Co. v. Willets, 3 Cir., 282 F. 26, insured with an attendant made trips by Pullman car to Philadelphia, Florida, Boston, and the Maine Woods in all, of course, in the interest of his health. He also went boat riding on a lake a few times.

Of course, as stated in the Lewis and Strength cases, supra, the application of a house confinement clause such as the one under consideration depends largely on the particular facts in each individual case. In both cases we held insured was not entitled to benefits.

In the case of Franklin Life Ins. Company v. Lewis, supra, insured's physician saw him three times at his office, described his illness as chronic myocarditis and advised rest, but insured was never confined at home because of illness and went fishing and made various automobile trips by himself and attended numerous hog and mule sales.

In the case of Franklin Life Ins. Company v. Strength, supra, insured's activity in breaking the continuity of the house confinement partook more of a business and

---

1. 36 Ala.App. 313.

2. 36 Ala.App. 422.

purely personal nature than it did of a therapeutic nature.

In this case the evidence was undisputed that insured was totally disabled. It was likewise without dispute that she was under the regular care and treatment of a physician and that her physician directed her to take automobile rides in the fresh air for her benefit.

Applying the facts to the construction of the provision of the contract by the courts, and defendant's own interpretation of said provision as evidenced by its President, we are of the opinion defendant was not entitled to the affirmative charge, and that the motion for a new trial, on the ground the verdict is not sustained by the great preponderance of the evidence, was properly overruled.

Defendant's requested charges 3, 4, 5 and 6 were hypothesized on a belief from the evidence rather than reasonably satisfied from the evidence, and, if not subject to other faults, were refused without error. Warner v. Warner, 223 Ala. 524, 137 So. 418; W. P. Brown & Sons Lumber Co. v. Rattray, 238 Ala. 406, 192 So. 851, 129 A. L.R. 526; Sovereign Camp, W. O. W. v. Sirten, 234 Ala. 421, 175 So. 539; Pittman v. Calhoun, 231 Ala. 460, 165 So. 391.

Affirmed.