CLESI v. NATIONAL LIFE & ACCIDENT
INS. CO., Inc.

No. 17237.

Court of Appeal of Louisiana. Orleans.

Feb. 26, 1940.

Rehearing Denied March 25, 1940.

Porteous, Johnson & Humphrey, of New Orleans, for appellant.

John C. Hollingsworth, of New Orleans, for appellee.

McCALEB, Judge.

The plaintiff, Peter Joseph Clesi, brought this suit against the National Life and Accident Insurance Company, Inc., to recover certain benefits allegedly accruing to him under two insurance policies issued by it in his favor.

One of these policies (No. 1621) is a life insurance contract for the principal sum of $1,000 which was issued to the plaintiff in consideration of a stated yearly premium of $39.82 and it provides that: "In consideration of the continuance of Policy No. 1621 on the life of Peter Joseph Clesi, the Company agrees to pay for the Insured the premiums thereafter becoming due thereon, if the Insured, before attaining the age of sixty years, after paying at least one full annual premium and before default in the payment of any subsequent premium, shall furnish satisfactory proof to the Company at its Home Office, accepted by it in writing, that he has become wholly and permanently disabled by bodily injury or disease, so that he is and will be for life continuously and wholly prevented thereby from performing any work or transacting any business, for compensation or profit, or from following any gainful occupation."

Plaintiff alleges that, during the year 1937, while he was less than sixty years of age, he became afflicted with heart disease and was rendered totally and permanently disabled from doing any work whatsoever; that the defendant was notified of his disability; that, notwithstanding this, it refused to comply with its obligation under the contract and pay for him the annual premiums; that he paid the premium of $39.82 falling due for the year 1938 under protest and that he is entitled to be reimbursed by the defendant for that sum and to be relieved from payment of premiums in the future.

The second policy (No. 123850), under which recovery is sought, is written on plaintiff's life for the sum of $500 and provides additional indemnity against loss of time resulting from injury or sickness in the sum of $15 per week, subject to certain conditions and limitations which will be hereafter discussed. Plaintiff claims a weekly indemnity in the sum of $16.50 per week under this policy alleging that the $15 weekly indemnity covenanted in the contract has been increased by ten per cent. because he has paid the weekly premium of $2.95 annually and in advance, all as provided for in Section "L" of the policy. He further declares that, during the year 1937, he became afflicted with heart disease; that, as a consequence thereof, he is totally and permanently disabled from engaging in his occupation of barber; that, on December 1, 1937, under advice of his physicians, he was forced to discontinue his barbering business; that, on January 31, 1938, the defendant was notified in writing of his disability; that, on February 28, 1938, he furnished to the defendant adequate proofs of his claim accompanied by his physician's certificate and that, notwithstanding that he has complied with the terms and conditions of the policy, the defendant has neglected to make payment to him of the indemnities for disability provided therein. He sues for the sum of $16.50 per week for 26 weeks beginning March 1, 1938, and also for the penalties and attorney fees provided for by Act No. 310 of 1910, alleging that the defendant's refusal

to pay him is not based upon reasonable grounds.

Liability for the agreement sought to be enforced under Policy No. 1621 is resisted by the defendant company on the ground that the plaintiff is not totally and permanently disabled. Defendant also denies liability under Policy No. 123850 for the following reasons:

(a) That plaintiff has failed to comply with the terms and conditions of the policy in that he did not notify it of his illness and · resulting disability within the time required in the contract; ·

(b) In the alternative, that plaintiff has not been necessarily and continuously confined within the house and therein professionally visited by a licensed physician at least once each consecutive week as required by Section "I" of the policy which prescribes the conditions upon which the full weekly indemnity not exceeding 26 consecutive weeks will become payable;

(c) Again, in the alternative, that if it is shown that plaintiff is suffering a total disability which did not confine him within his house as prescribed by Section "I" of the policy, then the limit of. liability of the defendant is one-half of the total weekly indemnity for a period not exceeding four consecutive weeks as provided for by Section "J" of the contract.

After a hearing in the lower court on the foregoing issues, there was judgment rendered in favor of the plaintiff for the sum of $39.82 under Policy No. 1621, and it was also decreed that plaintiff, being totally and permanently disabled, was relieved from the payment of any future premiums under that contract. It was further decreed that plaintiff have judgment under Policy No. 123850 for the sum of $16.50 per week for 26 consecutive weeks. Plaintiff's claim for penalties and attorney fees under Act No. 310 of 1910 was rejected. The defendant has appealed from the adverse decision and the plaintiff has answered praying that the judgment be amended so as to include therein his claim for penalties and attorney fees.

The facts of the case are not in dispute and they may be briefly stated as follows: On January 31, 1937, while the policies sued upon were in full force and effect, the plaintiff suffered a heart attack while attending a funeral. He was brought to his home where his physician, Dr. Hilaire D. Ogden, attended him. He was advised by Dr. Ogden to remain in bed for five or six weeks. After that time, he went to his barber shop and attempted to engage in his usual business. Later, he had several recurring attacks of his heart and on December 1, 1937, acting upon his physician's advice, he was compelled to discontinue the barbering trade. Dr. Ogden testified that plaintiff is afflicted with angina pectoris and that it would endanger his life for him to continue to work. He is not confined within the house but he has been advised by his physician to refrain from becoming nervous or excited and not to overexert himself.

Dr. Upton Giles, a heart specialist who examined plaintiff in 1938, states that Clesi is afflicted with a decompensating heart and that he is totally and permanently disabled from performing any work whatsoever.

The evidence submitted at the trial establishes beyond all doubt (in fact, it is conceded by the defendant) that the plaintiff is totally and permanently incapacitated from performing the duties of his occupation as a result of his heart affliction. He is therefore· entitled to the relief prayed for with respect to Policy No. 1621, issued by the defendant. As we have stated above, that policy contained a stipulation by which the insurer agreed to pay for the insured the annual premiums becoming due under the policy if the insured, before reaching the age of sixty, shall furnish satisfactory proof that he has become wholly and permanently disabled by bodily injury or disease so that he is and will be for life continuously and wholly prevented thereby from performing any work or transacting any business for compensation or profit·or from following any gainful occupation. It follows that the trial judge was correct in granting judgment in favor of plaintiff for the annual premium paid by him under protest after he had become disabled and also in relieving him from further responsibility for premiums due under the policy.

The questions presented with respect to defendant's liability under Policy No. 123850 are not so easily disposed of. That policy provides for indemnity against loss of time resulting from injury or sickness in the sum of $15 per week "all in the manner hereinafter provided and subject to the conditions and limitations hereinafter contained." The sickness indemnities stipulated for are contained in Sections "I"

and "J" of the contract. These sections read as follows:

"Section I. The Company will pay indemnity at the rate of the Weekly Indemnity not exceeding twenty six (26) consecutive weeks, for each whole day, after the first seven that the Insured is actually, necessarily and continuously confined within the house' and therein professionally visited by a licensed physician at least once each consecutive week, if such confinement is caused solely and exclusively by such sickness."

"Section J. The Company will pay indemnity at the rate of one-half the Weekly Indemnity not exceeding four (4) consecutive weeks, for each whole day, immediately following a confining period, or, when there is no 'confining period, for each whole day, after the first seven (7) days, that the Assured is totally and continuously disabled and prevented from performing every duty pertaining to any business or occupation and is continuously under the professional care and treatment of a licensed physician, although · not necessarily confined within the house, if such total disability is caused solely and exclusively by such sickness."

The language used in the quoted clauses is perfectly clear. Indemnity is provided for three types of disability—(1) when the insured is so ill that he is confined within the house and is therein treated by his physician; (2) when, following a confinement period, he has so far recovered that he is able to be outside the house and receive treatment from his physician at places other than the house; and (3) when he suffers from illness which is not necessarily house-confining but which requires him to receive treatment from his physician and is such as to prevent him from performing all duties pertaining to his business or occupation.

The first contention of the defendant is that it is not responsible to the plaintiff because the plaintiff failed to give notice of his sickness and disability within the time prescribed by paragraph four of the standard provisions of the policy. The condition relied upon reads: "4. Written notice of injury or of sickness on which claim· may be based must be given to the Company within twenty days after the date of the accident causing such injury or *within ten days after the commencement of disability from such sickness.*" (Italics ours.)

Under the miscellaneous provisions of the policy, it is stipulated: "Strict compliance on the part of the Assured and Beneficiary with all of the terms and conditions of this Policy shall be a condition precedent to recovery hereunder and failure in this respect shall forfeit to the Company all rights to any indemnity."

Counsel for the insurer assert that, in spite of the fact that the plaintiff suffered a heart attack on January 31, 1937, he did not notify the company until one year thereafter or on January 31, 1938, and that, in view of the policy condition respecting notice and the further stipulation providing that a failure to comply with the terms of the policy shall be a bar to recovery, his right to redress, if any existed, has been forfeited. .

■ There can be no doubt that provisions in policies of insurance requiring that the assured give notice of his injury or sickness within a specified time are binding where 'it is stipulated, as in this case, that a strict compliance on the part of the assured with the condition of the policy respecting notice shall be a condition precedent to recovery. In Wheeler v. London Guarantee & Accident Co., 180 La. 366, 156 So. 420, the Supreme Court held that conditions concerning notice appearing in an accident policy, (which were similar to those contained in the contract before us) were lawful and binding upon the assured. In that matter, the plaintiff brought suit on an accident policy for 200 weekly instalments of $12.50 each for partial disability resulting from an accident sustained by him on March 20, 1931. The policy provided that "written notice of injury on which claim may be based must be given to the company within twenty days after the date of the accident causing the injury" and that "any failure to comply with the provisions of this policy shall render invalid any claim made hereunder". Notice of the accident was given to the insurer approximately thirty days after its occurrence. The court, in resolving that plaintiff was not entitled to recover because he had failed to comply with the provisions of the policy, said: "In the absence of a statute providing otherwise, every insurer has the right to prescribe regulations as to notice and proofs of loss, and a stipulation in an accident policy that in order to entitle insured or his beneficiary to recover thereunder, notice of the accident or injury must

be furnished the insurer within a certain specified time, is reasonable and binding on the insured, and failure to give notice as required will defeat recovery, especially if the giving of such notice within the time prescribed is made a condition precedent to recovery. Dennis Sheen Transfer Co. v. Georgia Casualty Co., 163 La. 969, 113 So. 165; Curry v. Universal Life Insurance Co. (La.App.) 150 So. 408; 1 C.J. 471, § 181; Encyclopœdia of Insurance Law (Couch) vol. 7, § 1527; 1 Cyc. 274, 14 R.C.L. 1327, § 501."

■ There is, however, a distinction to be drawn between the policy considered in the Wheeler case and the one in the case at bar, in that, in the former, the indemnities were payable only in case the assured was injured in an accident whereas, here, the indemnities become payable for loss of time resulting from accident or sickness. The claim of the plaintiff is based upon the theory that he is permanently and totally disabled as a result of sickness, i. e., heart disease, and that he is entitled to the indemnities payable under Section "I" of the policy which provides for a weekly indemnity of $15 for loss of time resulting from house-confining sickness. While it is true that the policy requires that the insurer be notified of the assured's disability within ten days from the time it commences, it would seem most unreasonable to hold that the plaintiff has forfeited all his rights under the policy for not giving prompt notice when he is claiming that he is and will forever be wholly incapacitated as a consequence of his sickness. The best that can be said about his failure to give time-'ly notice, under these circumstances, is that he has waived his right to recover for the period of disability sustained by him prior to the date on which notice was given. Here, however, the plaintiff is not claiming disability payments for that period. On the contrary, he notified the insurer on January 31, 1938, that he is now totally disabled within the meaning of Section "I" of the policy and he claims weekly indemnities beginning on March 1, 1938. Under these circumstances, we conclude that, since plaintiff is seeking recovery of benefits payable under Section "I" of the policy for disability for 26 consecutive weeks beginning on March 1, 1938, on the theory that his total incapacity to engage in business is tantamount to house-confining disability, his notice to the defendant dated January 31, 1938, in which he advised it of his permanent condition, was timely and was a substantial compliance with paragraph four of the standard provisions of the contract.

The next question presented in the case is whether plaintiff is entitled to recover the weekly indemnities provided for by Section "I" of the policy because he is totally and permanently disabled from doing any work notwithstanding the fact that he is not confined to the house. Counsel for plaintiff argues that it is the well established jurisprudence of this state that, under policies of insurance providing for indemnities, where the insured is disabled as a result of sickness and is necessarily confined within the house, a showing that the insured is permanently and totally disabled from doing any work is sufficient to authorize a recovery. The cases of Newton v. National Life Insurance Co., 161 La. 357, 358, 108 So. 769, Lewis v. Liberty Industrial Life Insurance Co., Inc., 185 La. 589, 170 So. 4, 107 A.L.R. 286, and Hickman v. Pan-American Life Insurance Co., 186 La. 997, 173 So. 742, are cited in support of the proposition. On the other hand, counsel for the defendant contend that the decisions relied upon are not controlling because the policy sued upon is different from the ones considered in those matters.

The question confronting the court in the cited cases was whether the assureds in policies providing for disability benefits resulting from house or bed-confining sickness could recover upon a showing that they were totally and permanently disabled from doing any work whatsoever. By giving a most liberal interpretation to the provisions of the policies considered in those matters, the court held that the true intention of the parties to the contracts was to provide for indemnity where the insureds had suffered illnesses of such a character as to totally and permanently disable them, notwithstanding the fact that the policies provided that the indemnities would be paid only in case the insureds were confined to the house or bed. The leading case on the subject is that of Lewis v. Liberty Industrial Life Insurance Company, Inc., supra [185 La. 589, 170 So. 6, 107 A.L.R. 286], wherein it is declared that the theory, on which the courts have held that there may be recovery on an insurance contract in which liability is dependent upon a continuous confinement to the insured's house when, as a matter of fact, he is not so confined, is that it was

the intention of the parties to the contract to express by the words "continuous confinement to the house" a degree of disability or incapacity.

We find, however, that the policies sued upon in the cited cases did not contain provisions like those found in the policy now under consideration. In those matters the court deemed it necessary to interpret the clauses relied upon by the insurance companies because there was some doubt that the language used expressed the true intention of the contracting parties. Here, there is no reason to search for what the parties intended by the provisions of Section "I" of the policy, which stipulates that the full weekly indemnity will not be payable unless the assured is actually, necessarily and continuously confined within the house as a consequence of sickness, because Section "J" of the policy grants a disability indemnity in case the insured becomes incapacitated from doing work as a result of sickness although he is not necessarily confined within the house. In other words, there are two different indemnities payable for disability resulting from sickness, i. e., the full weekly indemnity in case the illness is house-confining and one-half of the weekly indemnity in case the sickness renders the insured incapable of work but does not confine him to the house.

■ Mr. Couch in his Cyclopedia of Insurance Law, Vol. 7, Section 1671, informs: "Policies of insurance which contain clauses providing for different kinds of benefits under differing circumstances, such, for instance, as total and partial indemnity, full and restricted indemnity, disability, total and partial, and death benefits, etc., should, as in other cases, be so construed as to give effect to the true contract; that is, such clauses should be construed as a whole and held to cover only what was intended, this is to be gathered from the phraseology used, construed in the light of the obvious intent of the contract, and thereby neither excluding matters intended to be within the coverage clauses, nor including matters not within the intent thereof. * * * Thus, if clauses in a policy are clearly separable, effect should be given in conformity therewith, as in case of clauses one of which refers to recovery for total disability and the other to recovery in case of death, or clauses which refer, one to total disability, and the other to partial disability."

Many authorities are cited by the author in support of the foregoing text which we believe sets forth the correct rule to be applied in construing provisions similar to those contained in the policy before us.

■■ To grant the plaintiff recovery for indemnities payable under Section "I" of the contract, when his right, if any, is plainly covered by Section "J," would be to destroy the agreement and rewrite a new one. This we cannot do. There can be no doubt, however, that, since the plaintiff is totally and permanently disabled from doing any work and since he is required to be treated at regular intervals by his physician, he is entitled to the indemnities provided for by Section "J" of the policy, that is, for four weeks from March 1, 1938, at $8.25 per week.

■ Counsel for the defendant nevertheless tell us that a recovery for the indemnities as provided in Section "J" of the policy should not be permitted in this case because plaintiff has not asked for any relief under that clause of the contract. We find no merit in this argument for the reason that the defendant has, in its answer, alternatively pleaded that, should its plea with respect to plaintiff's failure to give timely notice be denied and should it be found that he is permanently disabled but not confined within the house, then its liability is limited to the indemnities provided for by Section "J" of the policy.

For the reasons assigned, the judgment appealed from, insofar as it grants to the plaintiff a recovery under Policy No. 123850 for the sum of $429, is amended by reducing the amount thereof to $33 together with five per cent. per annum interest on $8.25 from March 28, 1938, until paid, upon $8.25 from April 4, 1938, until paid, upon $8.25 from April 11, 1938, until paid, and upon $8.25 from April 18, 1938, until paid. In all other respects, the judgment appealed from is affirmed. Defendant to pay the costs incurred in the district court, plaintiff to pay the cost of this appeal.

Amended and affirmed.