This suit was filed on January 10, 1939, in which the plaintiff seeks to recover of the defendant, as administrator of the Succession of Robert Williams, deceased.
It is alleged that Robert Williams was issued a policy of insurance on September 3, 1923, providing among other things for disability benefits at the rate of $5 per week, not to exceed 20 weeks in each 12 months of disability due to sickness. It is alleged that the deceased became insane in February, 1933, and was incarcerated in the hospital for the insane at Pineville, Louisiana, where he remained until his death on April 27, 1938.
Plaintiff further alleged that demand was made upon defendant for disability benefits at the rate of $5 per week, which demand was made by a relative of the deceased shortly after Williams was placed in the asylum and that the defendant company acknowledged said demand but refused payment thereof. It is not alleged that the party making the demand had any authority to do so.
It is further alleged that the deceased became insane before he ceased paying the premiums on his policy and that the disability from insanity relieved him from furnishing proof of disability and likewise incapacitated him and justified the payment of disability provisions under the policy.
The plaintiff in this suit seeks to recover $550, being disability benefits at the rate of $5 per week for 110 weeks, beginning March 1, 1933, and ending April 27, 1938. Secondly, a statutory penalty of a similar amount was prayed for, together with attorney's fees in the sum of $100, under the provisions of Act 310 of the Legislature of Louisiana for the year 1910. This second claim is not urged here.
To plaintiff's petition the defendant filed exceptions of no right and no cause of action, which exceptions were levelled chiefly at the fact that the failure to assert a right of action within two years after its accrual prevented recovery under the specific provisions contained in the contract of insurance.
The trial court sustained the exceptions and dismissed the suit. An appeal was perfected to this Court and on May 29, 1939, we rendered an opinion reversing the lower court and sending the case back to be tried on the merits. See, La.App., 190 So. 838. The defendant then answered the petition specifically setting up the defense that any action on the part of plaintiff was barred by failure to assert same within the two years of the accrual thereon and, in the alternative, that recovery should be limited to a specific provision contained in said policy.
The case was tried below upon a statement of facts and judgment rendered in favor of plaintiff for the full amount prayed for, but rejected the demands for penalties. The defendant is now prosecuting this, a suspensive appeal. *Page 836 
The following facts are agreed upon by plaintiff and defendant:
"1. The insured, Robert Williams, became insane during February, 1933, and during February, 1933, was placed in the Central Louisiana State Hospital for Insane in the Town of Pineville, Louisiana, where his insanity required that he remain and where he remained, as an insane person, to the date of his death in the same institution on April 27, 1938.
"2. That the insured, Robert Williams, while necessarily confined in the asylum on account of his insanity, was not confined to his bed while in the asylum.
"3. That premiums were paid up to and only up to April 10, 1933, on the policy sued upon and that on April 12, 1933, the policy was receipted for by an authorized representative of the defendant company and retained by the company.
"4. That the existence of the total disability from sickness, that is, the insanity of the insured was made known to and the knowledge admitted to have been received by the insurance company before April 10, 1933, when the last premium was paid, and that the insanity prevented him from furnishing proofs or giving notice of his disability or sickness.
"5. That no suit has been filed against the defendant company except the present suit.
"6. That defendant company has always denied liability and refused payment.
"7. That Cleveland Dear, a reputable attorney of the Alexandria Bar, would testify that a reasonable fee for plaintiff's attorney, if allowed by the Court, would be $100.00."
The three provisions of the policy we are called upon to interpret are as follows:
1. "No suit shall be brought nor action commenced against this company under this policy until 60 days after the claim has arisen thereunder, nor after two years shall have elapsed since the time that the right of action shall have accrued."
2. "One-half of the amount otherwise payable hereunder will be paid for a period not exceeding six weeks for sickness that does not confine the insured to bed, but does confine him or her strictly to the house for seven consecutive days."
3. "The policy provides for weekly benefits for sickness to be measured by seven consecutive days that the insured is by reason of illness confined to bed and under the care of a duly licensed and practicing physician. The number of weekly benefits payable in any twelve months is limited to 20."
The question of whether or not insanity is a sickness coming under the provisions of this policy has been settled in the affirmative in the cases of Lewis v. Industrial Life Insurance Company, 185 La. 589, 170 So. 4, 107 A.L.R. 286, and Clesi v. National Life Accident Insurance Company, 195 La. 736,197 So. 413.
It is admitted that the insanity of the insured was made known to defendant before the last premium was paid. Therefore, it was unnecessary that other premiums be paid during the period of insanity to keep the policy in effect, for the reason that defendant owed to the insured in sick benefits far more than the amount of the premium due thereafter. Olezene v. Eagle Life Insurance Company, Inc., 11 La.App. 153, 121 So. 881; Carter v. Washington Fidelity National Life Insurance Company, 10 La.App. 14, 120 So. 424; Benefit Association Railway Employees v. Bray,226 Ala. 444, 147 So. 640.
In the case of Hickman v. Pan-American Life Insurance Company,186 La. 997, 173 So. 742, 743, the Supreme Court of this State, after reviewing the jurisprudence of the Nation on the question, does the insanity of the insured excuse or relieve him from the provisions of the policy as to payment of premiums on time, giving notices specified in the policy, etc., had this to say:
"There is no good reason why we should analyze the conflicting opinions on this question. The courts that maintain that insanity is not an excuse for a failure of a policyholder to pay a premium falling due during such disability adhere to the letter of the contract, and maintain that such an excuse cannot avail the policyholder if it is not so stipulated in the policy. The courts that hold the other way say that the parties entering into a contract of insurance providing for a total disability benefit, and requiring proof thereof to be furnished by the insured to the insurer before default in the payment of a premium, do not contemplate that the cause of the disability may be insanity, and may therefore make it utterly impossible to give the notice within the period stipulated; *Page 837 
hence these courts maintain that it goes without saying that one of the parties to such a contract shall not be obliged to do something which providence alone has made impossible. That is the opinion of a majority of the courts; and we have decided to approve and adopt it. In the editorial note in 54 A.L.R. 611, referring to the case of Pfeiffer v. Missouri State Life Insurance Company, 174 Ark. 783, 297 S.W. 847, it is said:
"`The overwhelming weight of authority is to the effect that the insured, in policies requiring notice of the accident or disability within a stipulated time after the occurrence thereof, is excused for his failure to give such notice within the stipulated period if he is prevented from so doing by reason of mental incapacity resulting from the accident or disability, provided such notice is given a reasonable time after recovering his mental faculties.'"
We fully agree with that decision. To hold otherwise would be to forsake reason and justice by requiring an insane insured to do that which is impossible for him to do. We therefore conclude that the two-year prescriptive or peremptive provision in the policy is without effect as to an insane person for whom a legally appointed curator had not been provided. There is no suggestion that a curator was ever appointed to the insured in the case at bar, during the period of his insanity and prior to his death.
The only remaining question is, Under which of the sick benefit provisions of the policy does this case come? Is plaintiff entitled to 20 weeks' sick benefit out of each 12-month period of sickness under the provision requiring that the insured necessarily be confined to bed or is he entitled to one-half the regular weekly sick benefit for 6 weeks, under the provision requiring the insured to be strictly confined to his house?
A decision of this question would not be difficult if it were not for the language used by the Court in the case of Lewis v. Liberty Industrial Life Insurance Company, 185 La. 589,170 So. 4, 5, 107 A.L.R. 286. In that case the Court had a similar provision in a similar policy issued by the same defendant as in the case before us. It is true the second provision which we have quoted above was not urged or discussed in that case. In passing on the first provision, the Court said:
"The author of the dissenting opinion in the instant case comments upon this authority, and we quote that opinion with approval:
"`"All things that are not forbidden by law, may legally, become the subject of, or the motive for contracts." Rev.Civ. Code, Art. 1764. An insurance contract is no different from any other contract and represents the agreement between the insured and the insurer. There is no reason why an insurance company should not stipulate that its liability be dependent upon the insured being confined to his house, or to his bed, or to a hospital, or any other lawful condition. The theory on which the courts have held that there may be recovery on an insurance contract, in which liability is dependent upon continuous confinement to the insured's house, when, as a matter of fact, he is not so confined, is that it was the intention of the parties to the contract to express, by the words "continuous confinement to the house," a degree of disability or incapacity. By a parity of reasoning, necessary confinement to bed should be held to mean another degree of incapacity or disability, which, in the instant case, is superlative, for no greater incapacity can be imagined than insanity. In neither case does the insured meet the conditions imposed by the literal terms of the policy. Therefore, where the liberal rule or construction has been applied to policies of this kind, and the cases are numerous, the basis of the holding must have been that the fair intent of the policy contract was to insure against disability, the degrees of which were expressed by the words concerning confinement to house or bed. It is my understanding that this was expressly held in Newton v. National Life Insurance Company, 161 La. 357,108 So. 769.'
"There can be no doubt that it was the intention of both parties that, in consideration of the payment of the premiums, if the insured were totally disabled, she would be entitled to the benefits provided for in the policy. Her absolute disability or incapacity is conceded. The purpose of the clause in the policy requiring the insured to be confined to the house or to bed is to make certain of the disability and to protect the insurer against imposition. The medical testimony shows that it is to the *Page 838 
advantage of the patient, due to her type of sickness, not to be confined to bed or to her room. If we were to interpret the policy as contended for by the defendant, in every instance where an insured suffered from a sickness which responded favorably to medical treatment that required the patient to leave the bed and house, it would mean that the benefits of the policy would be forfeited as a result of the insured's efforts to be cured."
However, in a later case, namely, Clesi v. National Life 
Accident Insurance Company, 195 La. 736, 197 So. 413, 416, the Court explained the Lewis decision by stating that the policy involved in the Lewis case did not recognize and provide for degrees of sickness; that it only contained one clause relating to sickness indemnity. We quote from the Clesi opinion as follows:
"In those cases the court was called upon to construe the indemnity clauses contained in the policies in order to ascertain the fair intent of the parties to the contract. In the case of Lewis v. Liberty Industrial Life Insurance Company (185 La. 589, 170 So. [4] 5, 107 A.L.R. 286), the policy provided for weekly benefits for `sickness' and stipulated that the benefits would be paid only in the event that the insured was `necessarily confined to bed and that he shall remain under the professional care of a duly licensed and practicing physician'. The insured in that case became insane after the policy was issued, and due to the insanity she was totally disabled. But she was never actually confined to her bed. One of the questions involved was whether insanity is `sickness', as that term is used in the policy. It was held that it was, but the main question was whether she was entitled to recover in the absence of proof that she was actually confined to her bed. As touching that point we said: `There can be no doubt that it was the intention of both parties that, in consideration of the payment of the premiums, if the insured were totally disabled, she would be entitled to the benefits provided for in the policy. Her absolute disability or incapacity is conceded. The purpose of the clause in the policy requiring the insured to be confined to the house or to bed is to make certain of the disability and to protect the insurer against imposition.'
"It is clear that the decision in that case hinged upon the meaning of the policy, and it was definitely held that what the policy meant was that the insured was entitled to the weekly indemnities if she was totally disabled by sickness. The court made it perfectly clear that it was of the opinion that `The purpose of the clause in the policy requiring the insured to be confined to the house or to bed is to make certain of the disability and to protect the insurer against imposition'.
"The policy in that case did not recognize and provide for degrees of sickness, as does the one presently under consideration. In that case the policy contained only one clause relating to sickness indemnity. That clause was not followed immediately by another separate and distinct section providing for the payment of a smaller indemnity in case the insured should be totally incapacitated and still able to leave the house and go upon the streets and elsewhere. In the Lewis case and in the others cited by counsel for plaintiff, there seemed to be some doubt as to the true intent and meaning of the policies. But there is not the slightest doubt as to the meaning of the policy here involved. Its meaning is so clear that it cannot be misunderstood. The sick benefits are provided for in two separate and distinct complete paragraphs. One paragraph is written under the heading `Sickness Indemnities For Confinement Period'. The other is written under the heading `For Non-Confinement Period of Total Disability'; so that the intent and meaning of the parties is clearly explained in the written instrument itself. This feature of the policy distinguishes this case from those relied upon by the plaintiff."
Although in the Lewis case the court found that insanity is the greatest degree of incapacity imaginable from sickness of any nature, we are of the opinion the distinction drawn in the Clesi case is good, for we know of no law which forbids an insurance company from contracting as to what benefits it will pay for different degrees or kinds of sickness; and in the case at bar it has specifically contracted to pay a certain amount for a certain number of weeks if the insured is necessarily confined to his or her bed during that period, and to pay a different rate for a lesser number of weeks if he or she is only confined to his or her house but not confined to bed. We think it can make no difference whether the sickness which confines *Page 839 
one to his or her house is such as to cause greater incapacity than the sickness which confines the insured to his bed. It is a matter of contract entered into between the parties thereto and the court is without right to re-write it for them.
It is agreed that the insured in the case at bar was not confined to his bed but was confined in the insane asylum.
Plaintiff is therefore entitled to recover under the second provision of the policy which allows one-half of the regular weekly benefit for a period not to exceed 6 weeks.
The judgment of the lower court is therefore amended by reducing the principal amount of the award from $550 to $15, and as amended it is affirmed; costs of appeal to be paid by appellee.