For the reasons assigned, the judgment appealed from is affirmed, the defendants,

except the Pan-American Production Corporation, to pay all costs.

O'NIELL, C. J., recused.

197 So. 413

CLESI v. NATIONAL LIFE & ACCIDENT INS. CO., Inc.

No. 35808.

June 28, 1940.

John C. Hollingsworth, of New Orleans, for applicant.

Porteous, Johnson & Humphrey, of New Orleans, for respondents.

ODOM, Justice.

The defendant life and accident insurance company issued to plaintiff a policy by the terms of which it agreed to pay plaintiff certain "Accident Indemnities" as well as "Sickness Indemnities". The provisions of the policy relating to accident indemnities are not involved in this suit. The suit is to recover indemnities for sickness which caused total disability.

There are two sections of the policy which relate exclusively to indemnities payable on account of sickness. These are printed on the second page of the policy, and we reproduce them here just as they appear there:

"Sickness Indemnities
"For Confinement Period

"Section I. The Company will pay indemnity at the rate of the *Weekly Indemnity* not exceeding twenty-six (26) consecutive weeks, for each whole day, after the first seven, that the assured is actually, necessarily and continuously confined within the house and therein professionally visited by a licensed physician at least once each consecutive week, if such confinement is caused solely and exclusively by such sickness.

"For Non-Confinement Period of Total Disability

"Section J. The Company will pay indemnity at the rate of *one-half the Weekly Indemnity* not exceeding four (4) consecutive weeks, for each whole day, immediately following a confining period, or, when there is no confining period, for each whole day, after the first seven days, that the assured is totally and continuously disabled and prevented from performing every duty pertaining to any business or occupation and is continuously under the professional care and treatment of a licensed physician, although not necessarily confined within the house, if such total disability is caused solely and exclusively by such sickness."

The full weekly indemnity mentioned in Section "I" is fixed elsewhere in the policy at $15. Plaintiff sued to recover this indemnity for 26 weeks allowed under Section "I". The Court of Appeal, 193 So. 897, granted "indemnity at the rate of one-half the Weekly Indemnity" for four consecutive weeks, as allowed under Section "J". The plaintiff applied for writs, which we granted.

Relator's contention is that the court should have granted him indemnity for 26 weeks under Section "I" instead of indemnity for four weeks under Section "J".

The facts are not disputed. The insured is a barber by trade and is afflicted with a disease of the heart known as angina

pectoris. On January 31, 1937, he suffered a severe attack while attending a funeral. He was carried to his home, where he remained in bed for five or six weeks, attended regularly by a physician. At the end of that period he went back to his barber shop and attempted to engage in his usual business, but, due to recurring attacks, he was advised by his physician on December 1, 1937, to discontinue his trade altogether, which he did.

It is admitted by counsel for defendant that, due to this heart ailment, plaintiff was incapacitated during the entire year 1937 to follow his regular trade, that of barbering, but he failed to give the company the 10 days' notice of his illness, as required by the policy, and made no claim for indemnities due to his illness in the year 1937. Under Section "I" of the policy, he was entitled to recover the full indemnity of $15 per week during the six weeks he was confined to his bed in the early part of 1937. But it seems to be conceded that, by failing to give the notice and failing to claim indemnity, he has allowed his right to indemnity for that period to lapse.

He now claims full indemnity of $15 per week for 26 consecutive weeks beginning March 1, 1938, under Section "I" of the policy. While it is admitted by counsel for defendant that plaintiff was totally disabled on March 1, 1938, and is now totally incapacitated to follow his usual trade due to his affliction, the defendant denied his right to recover full indemnity under Section "I" of the policy for the reason that plaintiff was not on March 1, 1938, nor has he been at any time since then, "actually,

necessarily and continuously confined within the house and therein professionally visited by a licensed physician at least once each consecutive week", as provided in Section "I".

The facts relating to plaintiff's present physical condition are not disputed. He is totally and permanently incapacitated to follow his usual trade, but he testified at the trial that he owns four pieces of property which he leases; that he keeps a desk in the front room of his shop and requires his tenants to pay rents to him there; that he keeps a cash book and goes to the bank about once a week to deposit the amounts collected; that he visits his property to see that it is kept in repair, and that, when repairs are needed, he has the work done by others and then goes to the houses to see that the work is properly done. According to his own testimony and that of others, he is not now, nor has he been at any time since March 1, 1938, confined to his house.

Clearly, therefore, he is not entitled to the indemnities allowed under Section "I" of the policy, which are allowed only for "confinement periods". The Court of Appeal correctly held, however, that he is entitled to the indemnities provided for in Section "J" of the policy. That section allows one-half the weekly indemnity of $15 for a period not exceeding four consecutive weeks "immediately following a confining period, or, when there is no confining period," if, due to his affliction, he is totally incapacitated "although not necessarily confined within the house, if such total disability is caused solely and exclusively by such sickness".

There are no ambiguities in the terms of this policy. Sections "I" and "J" are clearly separable, and effect must be given to each. As relates to "Sickness Indemnities", the policy does not grant indemnity for disability alone. If it did, plaintiff's claim would be well founded.

Sections "I" and "J" recognize and relate to two degrees of illness. The first, or higher, degree, which is referred to in Section "I", exists when the insured is so ill that he is "actually, necessarily and continuously confined within the house". For this degree of sickness the policy allows a specified weekly indemnity for 26 consecutive weeks. The second, or lesser, degree of sickness is recognized and provided for in Section "J". This degree of sickness is such that, whereas the insured is totally disabled, yet his illness is not of that severe degree, or character, which necessarily confines him to his house. For this degree of illness he is entitled to a smaller weekly indemnity, paid for a shorter period of time.

These provisions of the policy are not unreasonable. They are clear and explicit, and lead to no absurd conclusions. We must therefore interpret them to mean what they say and must give effect to them as they are written. In the case of Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72, 74, 125 A.L.R. 1075, we said: "An insurance policy is the contract between the parties, and, like all other contracts, it is the law between them. Dorsett v. Thomas, 152 La. 60, 92 So. 734; Laporte v. North American Accident Ins. Co., 161 La. 933, 109 So. 767, 48 A.L.R. 1086."

In the Muse case, we quoted with approval the following extract from 14 R.C. L., Section 103, page 929: "In the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability, and to impose whatever conditions they please upon their obligations not inconsistent with public policy; and the courts have no right to add anything to their contracts, or to take anything from them."

We have not heretofore been called upon to pass upon contracts of insurance containing indemnity clauses precisely like the one presently before us. But policies which seem to be identical in terms with the one here involved have been considered by courts of other states. In Sheets v. Farmers' & Merchants' Mutual Life & Casualty Ass'n, 116 Kan. 356, 225 P. 929, 930, the Supreme Court of Kansas had under consideration a policy providing full indemnity for a disabling sickness which confined the insured to his house, and a lower specified rate for such illness as did not so confine him, and the court said: "The policy is not one of indemnity for disability alone. To recover the higher rate the disabling sickness must be such as keeps the insured necessarily and continuously in the house. The parties plainly contracted for degrees of sickness, and presumably premiums were assessed and paid on the basis of these degrees. It was not unreasonable to fix a higher rate for a sickness so serious as to confine the insured to the house than should be paid for an illness which disabled the insured from work or business, but did not prevent him

from leaving his house and making calls on his doctor, or upon others he chose to visit. * * * The entire contract should be considered together, and effect given to every part of it, and the clause relating to non-confining sickness can no more be ignored than those limiting the time for which insurance shall be paid. To do so would be to make a different contract than the parties made for themselves."

This case was cited and followed in Richardson v. Interstate Business Men's Accident Ass'n, 124 Kan. 685, 261 P. 565.

In Reeves v. Midland Casualty Co., 170 Wis. 370, 174 N.W. 475, 476, 959, where a similar policy was under consideration, the court said:

"Under the terms of the policy the insured was entitled to full indemnity only for the period during which he was necessarily and continuously confined within the house, and therein regularly and personally visited by a legally qualified physician. * * *

"The purpose of the company to thus limit its liability for full indemnity is made more plain when we consider the immediately following provision in the policy for partial inndemnity. Under that provision the insured is entitled to partial indemnity 'for the period not exceeding two consecutive months immediately following said confinement, during which the insured shall be regularly and personally attended by such physician, and wholly and continuously disabled and prevented from performing any and every duty pertaining to any business or occupation.'"

In Rocci v. Massachusetts Accident Co., 222 Mass. 336, 110 N.E. 972, 973, Ann.Cas. 1918C, 529, the Supreme Court of Massachusetts had under consideration a policy which contained practically the same stipulations as to the payment of sickness benefits as the one which we now have before us. In that case the court said: "A policy of insurance is a written contract. Its terms are to be given a reasonable construction. Each party is entitled to have the contract interpreted according to the words used, and not stretched to include gratuities to one whose misfortune may excite sympathy. A stipulation that there can be no recovery, except for a period while the insured is continuously confined within the house, is a reasonable one. It is for the parties to decide whether they want that kind of insurance. Presumably, the rate charged was based on the unlikelihood of such sickness continuing for a long period as compared with a simple disability sickness. The contrast between a benefit payable for a sickness which confines the insured continuously within the house, and one which merely disables him from all business or employment, is distinctly made in the policy at bar and a different rate of benefit is payable for each kind of sickness. It is an elementary rule in the interpretation of contracts that whenever reasonably practicable every word shall be given effect. It must be presumed that words have been employed for the purpose of expressing the intent of the parties."

The following cases are to the same effect: Mutual Benefit Health & Accident Ass'n v. Ferrell, 42 Ariz. 477, 27 P.2d 519;

Bockman v. Mutual Health Benefit & Accident Ass'n, 7 Tenn.App. 618; Stubblefield v. Mutual Benefit Health & Accident Ass'n, 11 Tenn.App. 411. See, also, Couch on Insurance, Section 1671.

The cases cited and relied upon by counsel for relator are Newton v. National Life Ins. Co., 161 La. 357, 108 So. 769; Lewis v. Liberty Industrial Life Ins. Co., 185 La. 589, 170 So. 4, 107 A.L.R. 286, and Hickman v. Pan-American Life Ins. Co., 186 La. 997, 173 So. 742. These cases do not support relator's contentions for the reason that the provisions of the policies involved in those cases were not the same as those in the one presently under consideration.

In those cases the court was called upon to construe the indemnity clauses contained in the policies in order to ascertain the fair intent of the parties to the contract. In the case of Lewis v. Liberty Industrial Life Ins. Co. [185 La. 589, 170 So. 5, 107 A.L.R. 286], the policy provided for weekly benefits for "sickness" and stipulated that the benefits would be paid only in the event that the insured was "necessarily confined to bed and that he shall remain under the professional care of a duly licensed and practicing physician". The insured in that case became insane after the policy was issued, and due to the insanity she was totally disabled. But she was never actually confined to her bed. One of the questions involved was whether insanity is "sickness", as that term is used in the policy. It was held that it was, but the main question was whether she was entitled to recover in the absence of proof that she was actually confined to her bed. As touching that point we said: "There can be no doubt that it was the intention of both parties that, in consideration of the payment of the premiums, if the insured were totally disabled, she would be entitled to the benefits provided for in the policy. Her absolute disability or incapacity is conceded. The purpose of the clause in the policy requiring the insured to be confined to the house or to bed is to make certain of the disability and to protect the insurer against imposition."

It is clear that the decision in that case hinged upon the meaning of the policy, and it was definitely held that what the policy meant was that the insured was entitled to the weekly indemnities if she was totally disabled by sickness. The court made it perfectly clear that it was of the opinion that "The purpose of the clause in the policy requiring the insured to be confined to the house or to bed is to make certain of the disability and to protect the insurer against imposition".

The policy in that case did not recognize and provide for degrees of sickness, as does the one presently under consideration. In that case the policy contained only one clause relating to sickness indemnity. That clause was not followed immediately by another separate and distinct section providing for the payment of a smaller indemnity in case the insured should be totally incapacitated and still able to leave the house and go upon the streets and elsewhere. In the Lewis case and in the others cited by counsel for plaintiff, there seemed to be some doubt as to the true intent and

meaning of the policies. But there is not the slightest doubt as to the meaning of the policy here involved. Its meaning is so clear that it cannot be misunderstood. The sick benefits are provided for in two separate and distinct complete paragraphs. One paragraph is written under the heading "Sickness Indemnities For Confinement Period". The other is written under the heading "For Non-Confinement Period of Total Disability"; so that the intent and meaning of the parties is clearly explained in the written instrument itself. This feature of the policy distinguishes this case from those relied on by plaintiff.

For the reasons assigned, the judgment of the Court of Appeal is affirmed.