ROGERS, Justice.
 

 The facts in this case are admitted. Briefly stated, they are that the insured, Robert Williams, became insane in February, 1933, and was confined in the 'Central Louisiana Hospital for the Insane, Pine-ville, Louisiana, until his death on April 27, 1938. Williams was insured by the defendant company and the premiums were paid on the policy up to April 27, 1938. The suit is by the administrator of the Succession of Williams, who seeks to recover $550, representing disability benefits of $5 per week for 110 weeks, beginning March 1, 1933, and ending April 27, 1938. Plaintiff also sues for interest, penalties, and attorney’s fees under the provisions of Act 310 of 1910.
 

 The district court rendered judgment in favor of plaintiff for the full amount claimed, but rejected the demand for penalties. The Court of Appeal, 1 So.2d 834, amended the judgment by reducing the principal amount of the award from $550 to $15. The case was brought here on a writ of certiorari.
 

 
 *897
 
 It is admitted that the insured, Robert Williams, while necessarily confined in the asylum on account of his insanity, was not confined to his bed.
 

 There are two provisions in the policy which relate to indemnities payable on account of sickness. The first provides that such benefits will be paid only for each period of seven consecutive days that the insured is, by reason of illness, necessarily confined to bed and is under the care of a duly licensed and practicing physician. The number of weekly benefits payable in any twelve-month period is limited to one hundred and twenty. The second provides for the payment of one-half the amount for a period not exceeding six weeks for sickness that does not confine the insured to bed, but does confine him or her strictly to the house for seven consecutive days, provided always that the combined periods, for which indemnity shall be paid for total and partial disability as above described under number 2, shall not exceed twenty weeks in any twelve months.
 

 The question presented for decision is, which of the two sick benefit provisions of the policy applies to the facts of this case? Is plaintiff entitled to twenty weeks sick benefits out of each twelve-month period under the provision requiring that the insured be confined to bed, or is he entitled to one-half the regular weekly sick benefits for six weeks, under the provision requiring the insured to be strictly confined to his house?
 

 The relator relies on the case of Lewis v. Liberty Industrial Life Insurance Company, 185 La. 589, 170 So. 4, 107 A.L.R. 286. And the respondent relies on the case of Clesi v. National Life & Accident Insurance Company, 195 La. 736, 197 So. 413.
 

 In the Lewis case, this Court recognized insanity as a sickness within the terms of a life and accident policy which conditioned the insurer’s liability upon the insured’s necessary confinement to bed and held that an insured who was insane and not confined to bed was entitled to recover on the policy.' The recovery was allowed by the Court on the theory that the contracting parties in using the term “confined to bed’’ merely intended to express a degree of incapacity or disability.
 

 In the Clesi case, this Court had under consideration a policy providing for house-confining sickness and for nonhouse-confining sickness, and the Court held that an insured, who was totally disabled as the result of a heart affliction but was not confined to his house, was entitled to indemnity only for nonhouse-confining sickness. The Court of Appeal, in the present case, held that the Clesi case, and not the Lewis case, was decisive of the issues involved in this case.
 

 An examination of the opinion in the Clesi case shows that the decision was predicated upon the following facts : Clesi, the insured, was a barber. He became afflicted with a disease of the heart known as angina pectoris. On January 31, 1937, he suffered a severe attack while attending a funeral. He was carried to his home where he remained in bed five or six weeks, attended regularly by a physician. At the
 
 *899
 
 end of that period, he returned to his barber shop and attempted to engage in his usual work, but owing to recurring attacks he was advised by his physician on December 31, 1937, to give up his trade altogether, which he did. Although Clesi was unable to follow his trade during the entire year of 1937, he did not make any claim for indemnity for that year, because he failed to give the insurance company the required ten days notice of his illness. Clesi’s suit was for the recovery of the full indemnity of $15 a week for 26 consecutive weeks, beginning March 1, 1938, under a provision of a policy which was similar to one of the provisions of the policy involved in this case. At the time of the suit, the facts relating to Clesi’s physical condition were as follows:
 

 He was totally and permanently incapacitated to follow his usual trade, but he owned four pieces of property which he leased. He maintained a desk in the front room of his barber shop and required his tenants to pay rents to him there. He kept a cash book and visited the bank about once a week for the purpose of depositing the money he collected. He visited his properties to see that they were kept in repair and, when repairs were needed, he caused them to be made by others under his supervision, calling at the place where the repairs were being made to see that the work was properly done. Clesi was not confined to the house at the time the suit was brought and never had been so confined since March 1, 1938, the date from which he claimed indemnity. Under these facts, this Court, affirming the judgment of the Court of Appeal, held that Clesi was not entitled to indemnity for twenty-six weeks under the clause of the policy covering house-confining sickness, but he was entitled to indemnity for four consecutive weeks at the rate of one-half the weekly indemnity under the clause of the policy covering nonhouse-confining sickness.
 

 This Court, in the Clesi case, discussed its previous decision in the Lewis case and pointed out the difference between the cases. The Clesi case is authority for the proposition that under a policy providing for two kinds of indemnity, one for house-confining, and the other for nonhouse-confining, illness, recovery will be allowed only for the latter case where the facts show that the insured was not only not confined to his house, but was able to attend to certain business matters. The Lewis case is authority for the proposition that an insured who, by reason of insanity, is confined to the house but not to the bed is entitled to indemnity under a policy providing that the insured be confined to the bed — the provision “confined” to bed expressing the degree of disability necessary for recovery.
 

 We think that the decision in the Lewis case is more appropriate than the decision in the Clesi case to the question involved in this case.
 

 It is true that in the Lewis case, in which the same defendant was also involved, the only clause of the policy under review was the clause providing for the payment of indemnity where the insured is confined to his bed. This may have been due to the belief entertained by the insurance
 
 *901
 
 company that in the case of an insured who becomes insane, the only question that could arise respecting the company’s liability was whether the insured was or was not confined to his bed, and not whether he was merely confined to his home. Be that as it may, we can not conceive of any affliction that would incapacitate the victim to a greater degree than insanity. It is difficult for an insured who becomes permanently disabled by insanity to meet the conditions imposed by the literal terms of the policy. For that reason the liberal rule of construction has been applied to policies of this kind, and the basis of the holding is that the fair intent of the policy contract is to insure against disability, the degrees of which are expressed by the policy. Thus this Court has construed the requirement of a policy that to be entitled to indemnity the insured must be confined to his house as meaning inability to work rather than physical inability to leave the house. Newton v. National Life Insurance Co., 161 La. 357, 108 So. 769. And in the Lewis case, as we have pointed out, the Court has construed the requirement in the policy, that the insured must be confined to his bed, as meaning in the case of an insured who is absolutely disabled by insanity, physical inability to leave the house, and not merely physical inability to leave his bed.
 

 No difference in the premium rates is specified in the policy. All the promised indemnities are based on the same rate, whether the disability of the insured is partial or permanent. It is not disputed that the disability of the insured in this case was permanent. The degree of his disability was fixed beyond question by the nature of his sickness. Whether he was confined to his bed or merely to his home is of no importance. The extent of his disability was the same in either case. If we were to interpret the policy as required by defendant, in every case where the insured becomes insane and remains in bed, he would be entitled to receive twenty weekly benefits in each year; whereas, if he fails to remain in bed but is necessarily confined to the house, he would be entitled to receive only six weekly benefits of one-half the amount otherwise payable under the terms of the policy. An interpretation of a policy that would lead to such an absurd consequence can not be accepted. As we said in the Lewis case, the; purpose of the clause requiring confinement to bed was to make certain of the insured’s disability and to protect the insurer against imposition. That purpose has been met in this case, for there is no uncertainty as to the insured’s disability and no question of any imposition being practiced upon the insurer.
 

 For the reasons assigned, the judgment of the Court of Appeal is annulled and the judgment of the district court is reinstated and made the judgment of this Court.
 

 O’NIELL, C. J., does not take part.