80 So.2d 571 (1955)
SUCCESSION of Leonce L. CORMIER.
No. 4011.
Court of Appeal of Louisiana, First Circuit.
May 17, 1955.
*572 Mouton & Mouton, Lafayette, for appellant.
Davidson, Meaux, Onebane & Nehrbass, Lafayette, for appellee.
TATE, Judge.
The District Court sustained an opposition by the "Hospital Association of the Southern Pacific Lines in Texas and Louisiana" (hereinafter referred to as the "Hospital Association"), appellee herein, and ordered the tableau of account filed by the administrator to be amended to include the additional sum of $946.40 as due the Hospital Association. Easton J. Cormier, Administrator of the succession of Leonce L. Cormier, appealed to this court.
The evidence indicates that Leonce L. Cormier had been an employee of a railroad company for more than fifteen years prior to his death, and in connection with his employment during that period was a member of the Hospital Association.
By-Law 1 thereof provides that "the object of the Hospital Association * * * is to furnish medical and surgical treatment and services to sick and injured employees of the" railroad company and its corporate affiliates.
The Hospital Association is maintained by payroll deductions from the employees of the railroad company. The treatment and services provided include, Rule 1: "a. treatment in hospital; b. treatment at surgeon's offices and at members residences; c. medicines and surgical dressings * *."
The record indicates that Leonce L. Cormier entered the Hospital Association hospital in Houston, Texas, on November 17, 1952, for treatment of a malignant tumor of the second lumbar vertebra. Cormier died as a result of this malignant tumor on December 8, 1953. He was hospitalized at this hospital from November 17, 1952 March 9, 1953; then again April 6-21, 1953; and finally June 7th-December 8, 1953, upon which latter date he died. *573 Rule 7 of the rules and regulations of the Hospital Association provided that for each separate disease or illness suffered by the employee protected by the agreement:
"7. Treatment for an illness or injury shall be continued until the patient is discharged by the attending surgeon * * *, but in no event shall the patient be entitled to continuous treatment in excess of one year."

By stipulation of evidence, the sole question for our determination is an interpretation of this rule, particularly the italicized last clause thereof.
In particular, the Hospital Association contends that it is not responsible for the charge of $946.40 representing treatment at their hospital from November 18, 1953, to December 8, 1953, because under said clause it was not responsible for treatment continued beyond a calendar year from November 17, 1952, when Cormier first entered their hospital. Contrariwise, the Administrator contends that the Hospital Association is liable for such treatment because the term "continuous treatment" refers to treatment continuous for a period of 365 days, and as is seen from the above Cormier only received hospital treatment for approximately 300 days, since he left the hospital at intervals during the year and returned home to Carencro.
As pointed out by the Hospital Association, citing jurisprudence from other jurisdictions, the term "medical treatment" is a broad general term covering all the steps taken to effect a cure of the injury or disease, including not only examination and diagnosis and the furnishing of medicines and hospitalization, but also the application of remedies by the patient following medical advice, and even the sending of medicines and prescriptions through the mail. Further, the services of an Association physician were available to Cormier when he was at home, had he needed same.
Therefore, when Cormier was home in Carencro, La., from March 10-April 6, 1953, and from April 21-June 7, 1953, it is argued, Cormier was receiving medical treatment continuously even though at home resting and taking the medicines (to relieve pain) received from the Hospital Association before he left the hospital. The Hospital Association further relies upon testimony of a medical expert that patients suffering from such cancerous conditions are considered under medical treatment although at home: the condition being incurable, the only medical treatment is to afford relief from pain by furnishing such medicines as Cormier took home with him from the hospital.
In short, the Hospital Association urges that the contract or agreement between itself and its members is the law between the parties and to be interpreted according to its terms, and that therefore under the terms thereof Cormier's year of continuous treatment for which the Association was liable had ended November 17, 1953, or a calendar year after the first date Cormier received treatment for this specific condition or disease. Cormier's estate would therefore be liable for treatment received after that date.
This is not an unreasonable construction of the policy, and the able District Court agreed therewith.
But the interpretation of the clause in question urged by the Administrator is equally reasonable, to the effect that the words of a contract must be interpreted according to the intent of the parties, Article 1945, C.C., and if ambiguous, must be construed against him who has prepared the contract, Article 1957, LSA-C.C.
The Administrator argues that the obvious intention of the limitation of liability for a year's continuous treatment was to limit the cost to the Hospital Association to cost of 365 days' treatment. Therefore, a patient resting at home pursuant to medical advice of "go home and rest", while perhaps generally speaking is "under medical treatment", is nevertheless not receiving medical treatment within the intention and meaning of the policy or contract. This refers to treatment by reason of which the Hospital Association incurs expense to itself, and by reason of which the policyholder *574 or member avoids expense or cost which he might otherwise have to pay.
Without such a contract, a policyholder would pay the examining physician for the office visit, for any medicines received, and for any house calls; but he would not pay the doctor for each day he stayed in bed at home pursuant to the doctor's advice. The medicines received by the patient at the hospital and taken home are a cost incurred during his stay in the hospital or at the doctor's office, not a cost incurred while he is staying home.
The Administrator further argues that if we accept the Hospital Association's interpretation of the agreement or policy prepared by it, an employee medically treated at the beginning of the year and told for instance to gargle his throat at home each day before going to work, would not be entitled to hospitalization 365 days later in graver or more aggravated subsequent stages of such condition.
The cause or consideration for this contract between the Association and its members was for the former to assume, and the latter to avoid, payment of the costs of medical treatment and medicines. The intention was not to include items for which the member would not be liable anyway in absence of the contract. For this reason, we feel that the interpretation urged by the Administrator more nearly reflects the intention of the parties to the agreement than that urged by the Hospital Association.
But if this clause should be regarded as ambiguous, then the well settled rule is that insurance contracts should be liberally construed in favor of the insured; or even if not regarded as an insurance contract, but an agreement between the parties, should be interpreted against the party who has prepared the contract; Article 1957, LSA-C.C.; Powell v. Liberty Industrial Life Insurance Co., 197 La. 894, 2 So.2d 638; Muse v. Metropolitan Life Insurance Co., 193 La. 605, 192 So. 72, 125 A.L.R. 1075; Ernest A. Carrere's Sons v. Rumore, La.App., 52 So.2d 57.
For these reasons, the judgment of the District Court herein is reversed, and the opposition filed by the Hospital Association herein to approval of the Administrator's account, and its claim for $946.40 medical expenses, is dismissed. All costs of these opposition proceedings and of this appeal to be paid by opponent-appellee.
Reversed and rendered.
LOTTINGER, Judge (dissents).
I disagree with the majority opinion rendered in this case. There is no disagreement as to the facts of the case; therefore we must apply the facts to the law and the law in this case is the contract. The majority is of the opinion that there is an ambiguity in the contract but I disagree with them. According to the rules and regulations under Rule 1 of the hospital association as found in the record I find the following:
"1. The following treatment and services will be provided by the association to members who contribute to the hospital fund, subject to the conditions and limitations hereinafter specified:
"a. Treatment in hospital.
"b. Treatment at surgeon's offices and at member's residences.
"c. Medicines and surgical dressings. * * *"
Under Rule 7 of said association I find the following:
"Duration of Treatment"
"7. Treatment for an illness or an injury shall be continued until patient is discharged by attending surgeon * * * but in no event shall the patient be entitled to continuous treatment in excess of one year." (Emphasis mine.)
It is admitted that this patient was entitled to continuous treatment for one year for his illness. It is likewise admitted that this patient entered the hospital of the association on November 17, 1952, with a metastatic malignant tumor of the second lumbar vertebra and died as a result thereof on December 8, 1953. It is further admitted *575 that this patient was actually confined to the said hospital on November 17, 1952, to March 9, 1953; April 6, 1953, to April 21, 1953; and June 7, 1953, to December 8, 1953, the date of his death. It is further admitted that this patient was rendered treatment and services at the said hospital from November 18, 1953, to December 8, 1953, when he died and that the cost for such treatment and services during that particular time amounted to $946.40, the amount in controversy. You can, therefore, see from the above that the amount in controversy only involves the charges made for the treatment and services rendered between November 18, 1953, to December 8, 1953, which is the period of time over and above the one year from the time that the patient was first admitted to the hospital with his said illness. You will likewise note from the above that this patient died as a result of the same illness or disease which he was suffering from when he was first admitted to said hospital. You will likewise notice from Rule 1 that the treatment and services to be rendered could consist of: a. Treatment in the hospital; b. Treatment at surgeon's offices and at member's residences. The evidence that I find in this record indicates that when the patient left the hospital on March 9, 1953, he left with specific instructions by the doctors to go home and take certain home treatments and he was likewise given a supply of pain relieving pills to take home with him and he had specific instructions to return to the hospital in one month for recheck. He was again given these same instructions when he left the hospital on April 21, 1953, and was likewise given a supply of pain relieving pills to take during the time he was home. I further notice that when the patient returned to the hospital on June 7, 1953, that he remained continuously until his death and during said period he was operated upon to relieve a bowel congestion. I further notice in the record that the medical testimony is to the effect that the home treatment given and rendered this patient is in line with treatment given to patients suffering with like illnesses as nothing more could have been done for him other than relieving pain. The hospital association contends that while the patient was only in the hospital for ten months and eight days, that he was rendered continuous treatment from the time of his entry of November 17, 1952, until his decease of December 8, 1953, and for that reason, they are entitled to be paid for the period of time beyond November 17, 1953, to December 8, 1953. The administrator, however, contends that because he left the hospital and went home between March 9, 1953, to April 6, 1953 and April 21, 1953, to June 7, 1953, that he did not receive continuous treatment, and for that reason they do not owe the said hospital bill.
It is to be remembered that when the patient left the hospital on the two occasions he was given a supply of medicine and pain relieving pills which would last him for a sufficient length of time until he would return to the hospital. The majority seems to think that when he was supplied this medicine at the hospital to take home that that was a hospital charge on that date only and they do not consider the supply of medicine given as well as home treatment instructions to be a continuous proposition. It strikes me that if the doctors or the hospital had sent the patient (while home) a required given number of pills or medicine each day to take for his home treatment they would have been complying with the rules of the association in giving continuous treatment if that was all that was necessary to prescribe, whereas, all that they did here was to eliminate the necessity of sending medicine each day by giving him a sufficient supply to last for a given period of time when he left the hospital. Furthermore the word "Treat" is defined as to medicine to be "to manage in the application of remedies." Treatment is the manner of applying remedies to cure; mode or course pursued for remedial ends." The common and accepted terms "being under doctor's treatment" or "being treated by a doctor," do not necessarily imply hospitalization. In its broader and commonly accepted sense (medically) treatment is to apply remedies, to diagnose, operate for or prescribe for *576 any disease, injury, deformity or to care for medicinally or surgically for such time as required. It appears to me, therefore, that the treatment rendered this patient in and out of the hospital from November 17, 1952, to December 8, 1953, was continuous. It is further noted under Rule 7 that a patient cannot receive continuous treatment in excess of one year for an illness. It is my appreciation of the facts that he only had one illness and that he received continuous treatment therefor.
I do not find anything ambiguous in any of the sections of the rules hereinabove quoted. The continuous treatment as provided under Rule 7 for any one illness contemplates treatment in the hospital as well as treatment in the surgeon's offices and at the patient's residences as provided under Rule 1. This patient had one illness and he died as a result of that said illness. It is, therefore, my appreciation of the contract that he should pay for the services rendered beyond the one year period as is disclosed in this record which represents the amount claimed by said association.
For the above and foregoing reasons I respectfully dissent from the majority.