212 So.2d 169 (1968)
Saluce MANUEL, Plaintiff-Appellee,
v.
AMERICAN INCOME LIFE INSURANCE COMPANY, Defendant-Appellant.
No. 2368.
Court of Appeal of Louisiana, Third Circuit.
June 18, 1968.
Dissenting Opinion June 20, 1968.
Rehearing Denied July 29, 1968.
*170 Dubuisson & Dubuisson, by James G. Dubuisson, Opelousas, for defendant-appellant.
Young & Burson, by I. J. Burson, Jr., Eunice, for plaintiff-appellee.
Before FRUGE, HOOD, and LEAR, JJ.
FRUGE, Judge.
This is a suit to enforce a policy of disability insurance. In September, 1965, plaintiff, Saluce Manuel, purchased from defendant, American Income Life Insurance Company, a disability policy to provide plaintiff with cash benefits in the event that he should become disabled from sickness or accident. Based upon the representations of the agent for defendant insurance company, plaintiff purchased the policy, and paid quarterly premiums of $54.00.
In April, 1967, Mr. Manuel was hospitalized for nineteen days as a result of a "severe myocardial infarction". Since that time, Mr. Manuel has been unable to perform any type of work or conduct any sort of business.
Defendant resisted payments under the disability policy on the grounds that plaintiff had misrepresented his health condition in his application for insurance. The insurer maintains that Mr. Manuel fraudulently represented that he had received no medical treatment ten years prior to the date of his application for this disability policy, when, in fact, several years previously he had undergone shock treatments.
The case went to trial. The trial court found that Mr. Manuel, in the presence of his wife, had told the defendant's agent of his previous shock treatments, but apparently that agent failed to mention such in the application he filled out. The court thus concluded that if there was any error made on the application forms, such error was caused by defendant's agent, and defendant was bound by its agent's acts. The district court then awarded plaintiff full payment under the disability policy, from which award defendant has taken this appeal.
In passing, the defendant-appellant requests this court to reverse the district court's finding that plaintiff had disclosed to defendant's agent that he had undergone shock treatments less than ten years before the day of the application for insurance, and to declare the policy null and void.
We find no manifest error in the trial court's conclusion. This factual determination becomes a question of credibility of witnesses, and the trial court accepted the testimony of plaintiff and his wife over that of defendant's agent. See Roy v. Trans-World Life Insurance Co., 199 So.2d 416 (La.App.3d Cir., 1967); Fruge v. Woodmen of World Life Insurance Society, 170 So.2d 539 (La.App.3d Cir., 1965). Defendant-appellant is bound by the knowledge and actions of its agent, although the blanks on the application form were filled incorrectly.
The paramount issue for our determination is the amount of recovery to which the plaintiff is entitled under the policy. Defendant-appellant concedes that plaintiff is totally and permanently disabled from performing any kind of work as to which he was previously accustomed.
The insurance policy under which plaintiff is seeking recovery is a "Personal Compensation Disability Policy".
There are two provisions in the insurance policy which provide for sickness benefits. One is Part 10, titled "CONFINING TOTAL DISABILITY BENEFITS FOR LIFE", which states:
"If `such sickness' causes continuous total disability and total loss of time, and requires continuous confinement within doors and regular and personal attendance *171 by a licensed physician, * * * the Company will pay at the rate of the Monthly Benefit * * * from the first medical treatment so long as the Insured lives and is so disabled and confined, suffers such loss of time and requires such personal attendance.
"The phrase `continuous confinement within doors', as used in this policy, shall mean that such sickness shall necessitate whole, total and continuous confinement by the Insured within doors; however, if the Insured shall go to the office of a licensed physician, * * * due to such sickness, confining sickness shall be considered to have continued without interruption."
The other sickness benefit is provided in Part 11, which is entitled "NON-CONFINING TOTAL DISABILITY BENEFITS FOR FOUR MONTHS", and which provides:
"If `such sickness' does not require continuous confinement within doors but does cause continuous total disability and total loss of time and requires regular and personal attendance by a licensed physician, * * * the Company will pay at the rate of the Monthly Benefit * * * from the first medical treatment for the period the Insured is so disabled, suffers such loss of time and requires such personal attendance, but not exceeding four months for any one sickness".
The trial court awarded plaintiff full monthly benefits of $200.00 per month for life under Part 10 relating to "Confining Total Disability". Defendant-appellant contends that plaintiff's total disability was not a confining one within the definition of Part 10 and that, therefore, plaintiff is only entitled to monthly benefits of $200.00 per month for four months, as stipulated in Part 11.
The district court found:
"At the time the policy was sold, Stanley Levy emphasized to Mr. and Mrs. Manuel that the policy would insure Mr. Manuel an income of $200.00 per month whenever sickness or accident prevented him from working. The Manuels were told that the only condition necessary to collect $200.00 per month for life under the policy was disability from whatever cause. Being functionally illiterate, Mr. Manuel was unable to read the policy when he received it, but relied solely on the information he had been given by Levy as to its contents."[1]
Defendant-appellant relies upon the case of Clesi v. National Life and Accident Insurance Co., 195 La. 736, 197 So. 413 (1940), while plaintiff-appellee, the cases of Newton v. National Life Insurance Co., 161 La. 357, 108 So. 769 (1926); Lewis v. Liberty Industrial Life Insurance Co., 185 La. 589, 170 So. 4, 107 A.L.R. 286 (1936); Powell v. Liberty Industrial Life Insurance Co., 197 La. 894, 2 So.2d 638 (1941); Bankson v. Mutual Benefit Health & Accident Association, 208 La. 1008, 24 So.2d 59 (1945).
In Newton v. National Life Insurance Company, supra, the Supreme Court was called upon to interpret the following language:
"* * * insured is by reason of illness * * * necessarily confined to bed * * *."
The Supreme Court remarked:
"The District Judge found as a fact that plaintiff's illness incapacitated him from work of any kind, and while the plaintiff frequently visited the office of his attending physician for treatment, he construed the word `confined' as used in the policy to mean inability to do work rather than physical inability to leave the house. We think this interpretation was correct, especially *172 as plaintiff was totally incapacitated * * *." (108 So. 770)
In Lewis v. Liberty Industrial Life Insurance Co., supra, plaintiff had become insane and sought recovery under an accident and sickness insurance policy, where recovery was contingent upon insured's being "necessarily confined to bed". The facts indicated that the plaintiff was not confined to bed under any literal sense of the word, but, rather, that he was allowed to leave the home for his own "advantage" and therapy. In other words, plaintiff was disabled from performing any type of work because of his insanity but was not otherwise confined or incapacitated.
The court recognized that these types of policies were intended to insure against disability and that "necessary confinement to bed should be held to mean another degree of incapacity or disability, which, in the instant case, is superlative for no greater incapacity can be imagined than insanity". (Emphasis ours.) Following the Newton case, the court permitted plaintiff recovery, noting that "the purpose of the clause in the policy requiring the insured to be confined to his house or to bed is to make certain of the disability and to protect the insurer against imposition".[2]
The next Supreme Court case interpreting a similar clause was the case of Clesi v. National Life and Accident Insurance Co., supra. In that case there were two benefit clausesone providing indemnity when "[the assured] is actually, necessarily and continuously confined within the house", and the other providing lesser payments when the insured was disabled from performing his work but not confined within his house. The facts in the Clesi case were as follows:
"* * * [Plaintiff] is totally and permanently incapacitated to follow his usual trade, but he testified at the trial that he owns four pieces of property which he leases; that he keeps a desk in the front room of his shop and requires his tenants to pay rents to him there; that he keeps a cash book and goes to the bank about once a week to deposit the amounts collected; that he visits his property to see that it is kept in repair, and that, when repairs are needed, he has the work done by others and then goes to the houses to see that the work is properly done. According to his own testimony and that of others, he is not now, nor has he been at any time since March 1, 1938, confined to his house." (197 So. 414)
The court found that the two indemnity provisions were not ambiguous, and, based on the facts as given, the Supreme Court concluded[3] that plaintiff was not confined to his house within the meaning of the insurance policy provision. In support of this conclusion, the court relied upon several common law decisions. It also distinguished the Lewis case on the grounds that there only one clause was involved, and not two.
The next case to interpret provisions similar to the instant case was Powell v. Liberty Industrial Life Insurance Co., supra. In the Powell case (as in the instant case) there were two policy provisions relating to benefits payable as a result of sickness. Payment of full benefits was contingent upon the insured's being "necessarily confined to bed", and lesser benefits for a shorter period were provided for when the disabled-insured was not so confined.
As in the Lewis case, the insured in the Powell case became totally disabled because of insanity and sought recovery under his disability policy. The Supreme Court distinguished the Clesi case and chose to follow the rationale of the Newton and Lewis decisions. The court recognized that provisions requiring that the insured be confined to his home or to his bed were designed to denote relative degrees of disability. *173 Based on this rationale, the court concluded:
"All the promised indemnities are based on the same rate, whether the disability of the insured is partial or permanent. It is not disputed that the disability of the insured in this case was permanent. The degree of his disability was fixed beyond question by the nature of his sickness. Whether he was confined to his bed or merely to his home is of no importance. The extent of his disability was the same in either case. * * * As we said in the Lewis case, the purpose of the clause requiring confinement to bed was to make certain of the insured's disability and to protect the insurer against imposition. That purpose has been met in this case, for there is no uncertainty as to the insured disability and no question of any imposition being practiced upon the insurer."[4] (2 So.2d 641)
The most recent case that we have found relating to the same type clause is Bankson v. Mutual Benefit Health and Accident Association, supra. In that case (as in the instant case) there were two provisions which provided the insured benefits for total disabilityone sum for disability "which confines the insured continuously within doors", and a lesser sum for disability, which "does not confine the insured continuously within doors".
In the Bankson case, the facts reveal that plaintiff suffered an illness which confined him to a house or hospital most of the time, but he was allowed by his physician to take walks and automobile rides, when attended.
The Supreme Court acknowledged that this state does not follow the literal construction of disability payment provisions, and quoted favorably from 29 Am.Jur., Insurance, § 1530, page 638, "`a person may be totally incapacitated and confined to his house within the meaning of a policy although he takes some exercise outdoors or visits his physician, provided he is entirely incapacitated for work or business on account of his injury or illness'". (Numerous citations omitted) The court distinguished the Clesi case on the grounds that there the insured was never confined to his house, and he was able to attend to certain business matters.
Liberally construing the words "confines the insured continuously within doors", the Supreme Court concluded:
"We think the parties intended by this clause, and we so construe it, that the insured would be permitted to recover under Part I of the policy if his disability by reason of illness was such that it would ordinarily require confinement within doors, and the fact that the patient is instructed or allowed to leave the confines of his home for the purpose of getting fresh air and sunshine, as in the case of tuberculosis, or to take walks to prevent atrophy and weakness of the muscles, as in this case, does not necessarily deprive the insured of his right to recover under Part I of the contract. Having reached this conclusion, it is immaterial whether in taking these walks the plaintiff went around the block to the barber shop, or to the doctor's office. The fact that he was treated in the doctor's office is likewise immaterial under the facts of this case for it appears from the record that the type of illness from which he was suffering necessitated a special treatment that was neither available nor convenient in the home." (Emphasis added.) (24 So.2d 63)
Plaintiff in the present case has suffered a very severe heart ailment, which requires that he remain inside his home practically all the time. Because of recurrent attacks (subsequent to the initial one) plaintiff has been intermittently confined for a number of weeks to his bed at *174 home. He must be very careful not to tire himself or to undertake anything that may cause a physical or mental strain. He takes a nap in both the morning and the afternoon of each day. His physician has instructed that he get some exercise, but has cautioned him against doing anything that may tire him physically or mentally. Thus, his doctor allows him to walk to his mailbox daily whenever he feels strong enough to do so, to occasionally visit a near-by country store to meet friends, to ride into town on certain occasions, usually to visit his physician, and to occasionally drive his automobile for very short distances when he feels strong enough.
We hold that plaintiff has suffered from "disability by reason of illness [which] is such that it would ordinarily require a confinement within doors", and therefore, plaintiff is entitled to recover under Part 10 for "Confining Total Disability Benefits for Life".
His was a total and permanent disability of a most absolute nature which prevents him from performing any type of gainful employment or business activity. Thus, the rationale of the Newton, Lewis, and Powell cases applies here.
We are of the further opinion that the rare excursions plaintiff made from his house were made by the instructions or upon the approval of his physician, basically for therapeutic purposesthat is, to prevent the wasting of muscle tissue and to aid a "pre-existing nervous condition". Therefore, the holding in the Bankson case is also applicable here. See generally, Couch, Insurance, § 53:141-148; 29 A.L.R.2d 1408 ff.
Assuming that the ratio decidendi of the Clesi case is still good law, we feel that it has no application here, because plaintiff in the instant case is, for all practical purposes, confined to his house by reason of the nature and seriousness of his heart condition and because plaintiff does not leave his house for the purpose of conducting any sort of business activity, as was the situation in the Clesi case.
Plaintiff-appellant has answered the appeal and requested that we correct the judgment of the trial court which fails to award plaintiff an extra $200.00 in special benefits due him because he was hospitalized during the month of April, 1967.
Since the district court's judgment does not clearly set forth that the defendant owes this additional $200.00, and since we find that under the provisions of the insurance policy, plaintiff-appellant is entitled to this additional sum, we shall amend the judgment of the trial court to this effect.
Plaintiff-appellant also maintains that the trial judge should have awarded him penalties and attorneys' fees, as provided for in R.S. 22:657. The awarding of such penalties and attorneys' fees must be predicated upon the arbitrary or capricious refusal of the insured to pay timely.
Plaintiff-appellant relies upon the cases of Morein v. American Physicians Insurance Co., 192 So.2d 887 (La.App.3d Cir., 1966); Brown v. Benton Creosoting Co., 147 So.2d 89 (La.App.2d Cir., 1962).
In both of these cases the defendant-insurer refused payment because of some tenuous defense which the record revealed was not interposed in good faith and was not substantiated by the evidence. In the instant case we find no manifest error in the district court's conclusion that the insurer's resistance to payment was based on a serious and good faith defense. After plaintiff's illness defendant discovered the misstatement in his application for insurance (sufficient to void the policy) and could sincerely believe, after further investigation, that the misstatement was fraudulently given by plaintiff. Therefore, we do not feel that plaintiff is entitled to penalties and attorneys' fees.
For the foregoing reasons, the judgment of the trial court is amended so as to award *175 plaintiff an additional sum of $200.00 as an extra benefit, and as amended the judgment is affirmed at defendant-appellant's cost.
Amended and affirmed.
HOOD, Judge (dissenting).
I think the plaintiff should recover under Part 11 of the policy because his ailment has caused him to suffer "continuous total disability." I am unable to agree with my conscientious colleagues, however, that he is entitled to recover under Part 10 of that policy on the ground that his sickness causes "continuous total disability and total loss of time, and requires continuous confinement within doors."
My interpretation of the evidence is that plaintiff is not confined indoors at all, except that he takes a nap for about an hour each morning and another nap for about the same length of time each afternoon. I cannot find that his doctor has ever recommended that he remain indoors or even that he take these naps. On the contrary, his treating physician, who is the only doctor who testified, has recommended that he increase his walking and outdoor exercises. The doctor testified that plaintiff could accept employment at a "sedentary job without too much responsibility," that he can make pleasure trips by automobile to other cities, including all day trips to New Orleans, provided that he does not do the driving, and that he can do his own driving for local trips. He stated that plaintiff could "drive to his field where his crops are growing and walk around for an hour or so, just looking at them." Plaintiff, in fact, has made several trips by automobile to Eunice to see his lawyer and his doctor, and on at least one of these trips he drove his own car. On other occasions since his heart attack he has travelled by automobile to Jennings, a distance of about 40 miles from his home, to visit with relatives, although his wife drove the car on those trips. In view of the medical testimony and plaintiff's activities, I cannot agree that his sickness "requires continuous confinement within doors."
Although my disagreement is largely on factual issues, I think the facts found by the majority and outlined in the majority opinion are sufficient to show that the rule applied in Clesi v. National Life & Accident Ins. Co., 195 La. 736, 197 So. 413 (1940), should be applied here.
For these reasons, I respectfully dissent.

On Application for Rehearing.
En Banc. Rehearing denied.
HOOD and SAVOY, JJ., are of the opinion that a rehearing should be granted.
NOTES
[1] The equity shown in this quotation is not the controlling factor of our decision. Rather it is set forth to show the type of coverage plaintiff believed he had acquired.
[2] Justice Odom, and two other justices dissented.
[3] Justice Odom was the organ of the court.
[4] Justice Odom also dissented in this case, being of the opinion that the Clesi case was decisive of the issue involved.