388 So.2d 470 (1980)
Samuel DUNCAN, Jr., Plaintiff-Appellee,
v.
J. C. PENNEY LIFE INSURANCE COMPANY, Defendant-Appellant.
Nos. 14236-14238.
Court of Appeal of Louisiana, Second Circuit.
August 18, 1980.
Rehearing Denied September 29, 1980.
*471 Breazeale, Sachse & Wilson by John B. Noland, Baton Rouge, Watson, Murchison, Crews, Arthur & Corkern by Ronald E. Corkern, Jr., Natchitoches, for defendant-appellant.
Sanders & Castete, Ltd. by Herman A. Castete, Winnfield, for plaintiff-appellee.
Before MARVIN, FRED W. JONES, Jr., and JASPER E. JONES, JJ.
En Banc. Rehearing Denied September 29, 1980.
MARVIN, Judge.
Defendant's insurance policy provides monetary benefits for each day an insured "... shall be necessarily confined to a hospital as a result of injury, and if such confinement commences within ninety days of the accident causing the injury ..."
Policy benefits, penalties, and attorney's fees were awarded the plaintiffs, a husband and wife, in these consolidated cases. The insurer appeals, contending that the issue should be stated as whether the respective hospitalization was medically necessary. The insurer argues that necessary, the adjective form of the adverb necessarily, means "... of an inevitable nature, inescapable, logically unavoidable... absolutely needed, required ..." We amend to disallow penalties and attorney's fees, and affirm.
The wife was hospitalized by the family doctor for 19 days in February for a bruise of her arm and a sprain of her shoulder sustained in a fall. The husband was hospitalized by the family physician for 20 days beginning in April for a soft tissue injury to his arm and neck sustained when he lost control of his automobile and it went into a spin.
The family doctor in Winnfield saw Mrs. Duncan 3-4 days after she fell. He testified that she complained of pain and had some decreased range of motion in her shoulder and arm. He hospitalized her, prescribing oral medication for pain and twice-a-day physical therapy. He admitted this treatment could have been administered without hospitalization but emphasized that since she had 3-4 small children at home, he could not expect her to remain inactive at home.
This doctor saw Mr. Duncan shortly after Mr. Duncan was injured. For Mr. Duncan's complaints of pain in the neck and elbow, the doctor hospitalized him and prescribed ice packs and pain medication, followed three days afterward by hydropacks, moist *472 heat, and physical therapy. The family doctor said he thought hospitalization was necessary because Mr. Duncan had muscle spasms in his neck and pain of some severity. The doctor admitted that he did not hospitalize all patients with cervical muscle spasms, "[i]t depends on my judgment and medical opinion at that time." We interpret the family physician's testimony in both instances to the effect that the length of hospitalization was determined by him on the basis of each patient's response to therapy that was administered by a qualified physical therapist at the hospital.
Mr. Duncan received two injections for nausea and for pain on the 14th day of his hospitalization after he fell in the hospital bathtub. Otherwise he and Mrs. Duncan, in the opinion of other physicians, could have been treated at home. Neither patient was limited by the doctor as to physical activity while in the hospital and the nurses' notes show that Mr. Duncan was up and about and generally not complaining of pain during his stay. Mr. Duncan temporarily checked out of the hospital for about two hours on his first day to obtain personal belongings and on the second day he was temporarily excused for about eight hours to drive to and from Shreveport to attend to personal business.
Five other doctors, three of whom practiced in Winnfield, testified. The Winnfield doctors generally agreed, from a review of the medical and hospital records, that they probably would not have hospitalized either patient and certainly not for more than 4-5 days, if at all. One of these doctors referred to Mrs. Duncan's stay as "prolonged and excessive", "not necessary." Another was somewhat more equivocal, while the third thought Mrs. Duncan's hospitalization was "questionable" and agreed that Mr. Duncan's stay for some 20 days was not medically necessary.
The remaining two doctors, non-residents of Winnfield, were unequivocal in stating that it was not necessary for these patients to have been hospitalized.
The trial court preferred the testimony of the family doctor ["the best evidence"] over that of the other doctors who "... saw only the bare bones of the hospital records or testified in answer to hypothet[ical questions]", and concluded that each hospitalization was "necessary" within the meaning of the policy. The insurer contends that the trial court erred in this respect, especially because these plaintiffs were shown to have daily indemnity benefits with nine other insurers which would make them eligible to receive $418 for each day they were hospitalized. The policies in question here provide Mr. Duncan with $115, and Mrs. Duncan with $75, per day. In addition to the claim here presented, the insurer shows that Mr. and Mrs. Duncan have been hospitalized for more than four months (88 days for Mr. Duncan and 38 days for Mrs. Duncan) during the period 1975 through May, 1978, and that they have claimed in some nine lawsuits against these companies during that time, over $15,000. We agree that these facts, the nebulous nature of the claimed accidents here, and the absence of objective symptoms of injury other than his muscle spasms and her bruise, strongly indicate a motive on the part of the Duncans to use their positions as insureds under the several policies to reap financial gain.
The ultimate question, however, concerns the interpretation of the language, necessarily confined to a hospital as a result of an injury, and the action of the Duncan's family physician in hospitalizing the Duncans. The insurer pleaded no affirmative defense such as fraud, but merely denied the allegations of each plaintiff. The family physician is not accused of any wrongdoing and it is shown that he does not share in any of the hospital's revenues. The insurer argues that the reason Mr. and Mrs. Duncan caused themselves to be hospitalized is indirectly important to the central issue of whether the hospitalizations were [medically] necessary. In this context the insurer persuasively argues that the overwhelming weight of the evidence shows that the hospitalizations were not medically necessary because there were no facts known to the family doctor which were not revealed in *473 the medical and hospital records to the other doctors who testified.
The term medically necessary is used as a condition of recovery in some policies, but that term is defined in those policies. See and compare the language of the policy in Franks v. Louisiana Health Service and Indemnity, 382 So.2d 1064 (La.App.2d Cir. 1980) where that term was applied to deny coverage. Even should we agree here that the language of this policy somehow requires that the hospitalization be "medically necessary", we do not have, as we did in Franks, a policy definition for the word.[1] Necessary is a word susceptible of many meanings. It may mean merely that which is "useful or convenient", or it may mean that which is absolutely compelling, "... of an inevitable nature, inescapable, logically unavoidable ... absolutely needed, required ..." Black's Law Dictionary, 5th Edition.
This insurer chose to define the words hospital and injury in these policies, but did not choose to employ the Franks' policy language requiring the hospitalization to be medically necessary. Neither the law nor the policy permits us to stretch or to construe the language of this policy, necessarily confined to a hospital, to mean that the hospitalization must be medically necessary in the Franks' context. If the language of this policy is ambiguous, we are not at liberty to construe this language to the detriment of the insured, but liberally in favor of the insured and strictly against the insurer. Bankston v. Mutual Ben. Health & Accident Assoc., 245 So.2d 59 (La.1945).
We are not without some guidance, however. The term necessarily confined to... has been construed in several Louisiana cases which involved disability policies. See Manuel v. American Income Life Insurance Company, 212 So.2d 169 (La.App.3d Cir. 1968). In three of these cases discussed there, Lewis v. Liberty Industrial Life Insurance Co., 185 La. 589, 170 So. 4, 107 A.L.R. 286 (1936); Powell v. Liberty Industrial Life Insurance Co., 197 La. 894, 2 So.2d 638 (1941); and Newton v. National Life Insurance Co., 161 La. 357, 108 So. 769 (1926), the language in the policy was necessarily confined to bed. Our appreciation of the holding of these cases is that this policy language, necessarily confined to..., is designed to denote the existence of the risk insured against and not to relegate literally the insured to a particular confinement.
The risk insured against here is an insured being necessarily confined to a hospital as a result of an accidental injury. The terms hospital and injury are defined in the policy. The other words remain to be construed ordinarily and in the context of the risk insured against. In the ordinary sense, necessary confinement in a hospital (as that term is defined in the policy) can only be directed by a medical doctor who is authorized by a particular hospital to admit patients. The risk exists or attaches when an insured is "necessarily confined to a hospital [as hospital is defined in the policy] as a result of injury [as injury is defined in the policy] ... within ninety days of the accident causing the injury ..."
*474 In some practical instances, hospitalization may be necessary because of a life and death matter. In other practical instances, hospitalization for treatment and observation, which could be done without hospitalization, may be necessary because it is more convenient to either or both, the doctor and those who treat at his direction, and the patient. In finding ambiguous the term necessarily confined, and in construing it against the insurer and in favor of the insured as the law directs, we are not abdicating our responsibility to legally construe the insurance contract and we are not relegating resolution of a coverage dispute to the family physician.
Under the policy as written, the insurer has defenses. Any fraud on the part of the insured would defeat coverage. The occurrence of an accident is a condition of coverage. An "intentionally self-inflicted injury", and an injury resulting from the use of a drug not prescribed by a physician, are express exclusions of the policy. Yet the insurer here asserts no affirmative defenses, but suggests that the factual evidence which might have been used with other evidence to prove one or more affirmative defenses, should be used by the court to legally construe necessarily confined to a hospital to mean medically necessary as that term is defined in the Franks' policy. In this instance, we cannot do what the insurer has failed to do for itself. The insurance code authorizes an insurer to incorporate provisions in a policy of insurance to limit its liability. See e. g. L.R.S. 22:213(B).
We do agree, however, with the insurer's alternative contention that attorney fees and penalties should not have been awarded the insureds under the circumstances of this case. The insurer's refusal to pay benefits was not based on the existence of the other policies which provided similar benefits to the insured but was based on an arguable construction of the policy, which although found without merit, is not unreasonable. L.R.S. 22:657.
Judgment in each case is amended to delete the award of penalties and attorney fees, and in all other respects and at the cost of appellant, is affirmed.
AMENDED and AFFIRMED.
NOTES
[1] "Basic and Supplemental Benefits are NOT provided for the following types of hospital admissions or portions of admissions.

Not medically necessary-i. e., when in the judgment of the Carrier the medical services did not require the acute hospital bedpatient (overnight) setting, but could have been provided in a physician's office, the outpatient department of a hospital, or in a lesser facility without adversely affecting the patient's condition or the quality of medical care rendered. Some examples are:
Admissions primarily for observation or evaluation and/or diagnostic studies that could have been provided safely and adequately on an outpatient basis.
Admissions to control or change the patient's environment.
. . . . .
THE FACT THAT A PHYSICIAN MAY PRESCRIBE, ORDER, RECOMMEND, OR APPROVE A SERVICE OR SUPPLY DOES NOT, OF ITSELF, MAKE IT MEDICALLY NECESSARY OR MAKE THE CHARGE AN ALLOWABLE EXPENSE, EVEN THOUGH IT IS NOT SPECIFICALLY LISTED AS AN EXCLUSION." 382 So.2d at 1066.